

# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>MICHAEL T JAMISON | Case Number:  14SL-CC01376 |
| Plaintiff/Petitioner:<br>CYNTHIA K DAVIS | Plaintiff's/Petitioner's Attorney/Address:<br>ELKIN L. KISTNER<br>SUITE 1280<br>101 SOUTH HANLEY ROAD<br>ST. LOUIS, MO  63105 |
| **vs.** | |
| Defendant/Respondent:<br>CITIBANK NA | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>7900 CARONDELET AVE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Other Miscellaneous Actions | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:  **CITIBANK NA**
        **Alias:**

SERVE: EUGENE M MCQUADE
399 PARK AVE
NEW YORK, NY 10022

*COURT SEAL OF*

*ST. LOUIS COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.

__14-MAY-2014__
Date
Further Information:
CNM

_____ Clerk

## Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by:  (check one)
   - ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
   - ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
   - ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
   - ☐ other (describe) _____
Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____        _____
Printed Name of Sheriff or Server          Signature of Sheriff or Server

**Subscribed and Sworn To me before this** _____ (day) _____ (month) _____ (year)
I am: (check one)
   - ☐ the clerk of the court of which affiant is an officer.
   - ☐ the judge of the court of which affiant is an officer.
   - ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
   - ☐ authorized to administer oaths.  (use for court-appointed server)

*(Seal)*

_____
Signature and Title

| Service Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____  ( _____ miles @ $ _____ per mile) |
| **Total** | $_____ |

See the following page for directions to clerk and to officer making return on service of summons.

Rules 54.06, 54.07, 54.14, 54.20;
506.500, 506.510 RSMo

EXHIBIT A

## Directions to Clerk

Personal service outside the State of Missouri is permitted only upon certain conditions set forth in Rule 54. The clerk should insert in the summons the names of only the Defendant/Respondent or Defendants/Respondents who are to be personally served by the officer to whom the summons is delivered. The summons should be signed by the clerk or deputy clerk under the seal of the court and a copy of the summons and a copy of the petition for each Defendant/Respondent should be mailed along with the original summons to the officer who is to make service. The copy of the summons may be a carbon or other copy and should be signed and sealed in the same manner as the original but it is unnecessary to certify that the copy is a true copy. The copy of the motion may be a carbon or other copy and should be securely attached to the copy of the summons but need not be certified a true copy. If the Plaintiff's/Petitioner has no attorney, the Plaintiff's/Petitioner's address and telephone number should be stated in the appropriate square on the summons. This form is not for use in attachment actions. (See Rule 54.06, 54.07 and 54.14)

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each Defendant/Respondent. If any Defendant/Respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than 30 days from the date the Defendant/Respondent is to appear in court. The return should be made promptly and in any event so that it will reach the Missouri Court within 30 days after service.

EXHIBIT

## IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
## STATE OF MISSOURI

RECEIVED AND FILED
CIRCUIT COURT OF
ST. LOUIS COUNTY

2014 APR 25  PH 3: 47

JOANN GILMER
CIRCUIT CLERK

| | | |
|---|---|---|
| CYNTHIA K. DAVIS, | ) | |
| | ) | |
| | ) | Case Number: |
| Plaintiff, | ) | |
| | ) | Division No: 14SL-CC01376 |
| v. | ) | |
| | ) | |
| CITIBANK, N.A., | ) | |
| **Serve: Eugene M. McQuade** | ) | |
| **Chief Executive Officer** | ) | |
| **Citibank, N.A.** | ) | |
| **399 Park Ave.** | ) | |
| **New York, NY 10022** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**10**

### PETITION FOR DAMAGES

COMES NOW Plaintiff Cynthia K. Davis, by and through her attorneys, and for her

Petition states:

### PARTIES TO THIS ACTION

1.     Plaintiff Cynthia K. Davis is an individual and is a resident of the State of

Missouri, residing in St. Louis County, Missouri at 9112 White Avenue, Brentwood, MO 63144.

2.     Defendant Citibank, N.A. is a Corporation, authorized to do business in the state

of Missouri and has it principal place of business in South Dakota.

### VENUE AND JURISDICTION

3.     The transactions and events which are the subject matter of this Complaint

occurred within the County of St. Louis, State of Missouri.

4.     The subject property herein, 9112 White Ave., Brentwood MO 63144 is located

within the County of St. Louis, State of Missouri.

EXHIBIT A

5.      The Venue for this action properly lies in St. Louis County, Missouri pursuant to §508.010.5 (1), RSMo.

## STATEMENT OF FACTS

6.      Plaintiff and her husband, James W. Davis, own the property located at 9112 White Ave., St. Louis MO 63144 ("the Property") as husband and wife (collectively "Owners"). The Property is currently subject to a first mortgage ("1st DOT"), in the original principal amount of $390,500.00 executed by Owners, in favor of J.P. Morgan Chase N.A. ("Chase"), a copy of which is hereby attached as Exhibit 1.

7.      The Property is also subject to a second mortgage, in the form of a home equity line of credit ( 'HELOC"), which line of credit has a limit of $108,500.00, which HELOC agreement is executed by Plaintiff, and secured by the Property, in favor of Defendant Citibank, N.A. ("Citi"), a copy of which is hereby attached as Exhibit 2.

8.      On or about September 9, 2011, Owners contacted Chase for the purpose of refinancing the 1st DOT.  Owners completed the application via telephone.  A copy of Owners Uniform Residential Loan Application ("1003") is hereby attached as Exhibit 3.

9.      Owners received from Chase confirmation that Owner's application for refinancing was received.

10.     Owners also received a Mortgage Conditional Approval letter, which included additional instructions for obtaining final loan approval.  Included on page 2 of the Mortgage Conditional Approval is the following: "We will obtain and review the following:

- Provide documentation showing secondary financing has been subordinated.
- Cash back to borrower cannot exceed $250.00.  Any excess funds must be used to reduce the loan balance.

2

EXHIBIT A

- Financed closing costs cannot exceed actual closing costs/prepaid/discount points, 4% of current unpaid principal balance or $5000, whichever is less."

The Mortgage Conditional Approval is hereby attached as Exhibit 4.

11.    Plaintiff was advised verbally and in writing by Chase that Plaintiff would have to obtain a subordination agreement from Citi for the HELOC as a condition of the proposed refinance.

12.    On or about October 13, 2011, Plaintiff received a letter from Citi which acknowledged the request for subordination of the HELOC to the 1st DOT. Citi's letter provides in relevant part: "We have received your request for the subordination of your Home Equity Account. Please note that Citi charges a $200.00 subordination fee. This fee will be assessed to your account and will appear as a fee on your monthly account statement." A copy of the letter is hereby attached as Exhibit 5.

13.    On or about October 14, 2011, Citi sent the subordination agreement to Title Source, Inc., the settlement agent for the refinance transaction which was subsequently recorded.

14.    Owners closed on the refinance of the 1st DOT with Chase on October 26, 2011. The $200.00 subordination fee as charged by Citi was not charged at closing but instead added to Plaintiff's monthly statement from Citi on the HELOC and paid by Plaintiff to Citi.

## CLASS ACTION ALLEGATIONS

15.    This action is brought by the named Plaintiff, as a class action, on her on behalf and on behalf of all others similarly situated, pursuant to Rule 52.08 of the Missouri Rules of Civil Procedure and Section 407.025, RSMo.

16.    Plaintiff represents a class consisting of all persons who were charged a fee to subordinate a HELOC issued by Citi for the last 10 years.

3

EXHIBIT A

17.     Although the exact number of members of the class is now unknown, it is estimated that there are hundreds of members and as such the class is so numerous that joinder of individual members in this action is impracticable, but not so many members that administration of the class is unmanageable.

18.     There are common questions to members of the class.  Such common questions include, but are not limited to, whether the Defendant is liable to Plaintiff and the class:

(a)  For violating the Missouri Merchandising Practices Act, Section 407.010, RSMo, et seq.;

(b)  For concealing or omitting a material fact under the MMPA:

(c)  For breaching a duty owed to the Plaintiff and the class by charging a fee for which there was no right to collect;

(d)  For unjustly enriching itself at the expense and loss to their customers;

(e)  For failing to disclose the subordination fee;

(f)  For misrepresenting the law as to its right to charge a subordination fee;

(g)  For fraud in charging a fee for doing that which they had already agreed to do;

(h)  Defendant's liability for punitive damages;

(i)  Defendant's liability for class counsel's attorney fees.

19.     The claims of the named Plaintiff are typical of the claims of the other class members of the proposed class and the Plaintiff can and will fairly and adequately represent the class.  The named plaintiff has no interest adverse to the interests of the class.

4

EXHIBIT A

20.     Counsel selected by the above named Plaintiff are experienced in handling class actions and other complex litigation and will fairly and adequately represent the interest of all of the members of the class.

21.     The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I

### UNJUST ENRICHMENT

22.     Plaintiff re-alleges and incorporates by reference herein all of the allegations set forth in paragraphs 1 through 21, above.

23.     Plaintiff entered into the HELOC agreement with Citi on or about March 13, 2007.

24.     On or about October 13, 2011, Plaintiff received a letter from Citi in response to Plaintiff's request for subordination in connection with the refinancing of the Property.  See Exhibit 5.  Citi advised Plaintiff of its willingness to provide the requested subordination in return for a payment of $200.00, which Plaintiff subsequently paid.

25.     The HELOC agreement entered into between Plaintiff and Citi does not contain any provision regarding the charge for a subordination fee.

26.     Citi had no right to charge a fee for the subordination of its interest in the Property.

27.     Given the fact that no term of the HELOC agreement allows Defendant Citi to charge a fee for the subordination agreement, its receipt of the fee is unlawful, which unjustly enriched Citi at Plaintiff's expense.

EXHIBIT A

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant Citi, declaring that Citi had no right to charge a fee for the subordination without specific authorization in the contract between Plaintiff and Citi; ordering that Citi reimburse Plaintiff in the amount of the subordination fee; that this Court award her the costs she has incurred in this action and that it provide her with such other and further relief as the court may deem proper.

## COUNT II

### DECEPTIVE PRACTICES: CONSUMER FRAUD AND FAIR MERCHANDISING PRACTICES ACT

28.     Plaintiff re-alleges and incorporates by reference herein all of the allegations set forth in paragraphs 1 through 27, above.

29.     Section 407.020 (1), RSMo, states that it is an unlawful practice to conceal or omit any material fact in connection with the sale of any merchandise in trade or commerce in the State.  Section 407.010 (4), RSMo, defines "Merchandise" as any objects, wares, goods, commodities, intangibles, real estate or services.

30.     The origination, processing and funding of Plaintiff's mortgage loan falls within the statutory definition of Merchandise.

31.     Citi has no provision in its HELOC agreement which permits Citi to charge a subordination fee to Plaintiff.

32.     Despite its knowledge of this fact, Citi not only charged the fee to Plaintiff, but failed to disclose the fee on numerous occasions.  By the time the fee was disclosed to Plaintiff, Plaintiff had made a commitment, financially and otherwise to the refinance, and had little opportunity to dispute the charge, or to investigate the basis for such.

33.     Furthermore, Defendant's requirement that Plaintiff obtain a subordination of the HELOC and incur the subordination fee is contrary to law.  Section 9-103 (2) of the U.C.C.

EXHIBIT A

states: "purchase-money obligation" means an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used".  Subsection (f) states: "No loss of status of purchase-money security interest in non-consumer-goods transaction.  In a transaction other than a consumer-goods transaction, a purchase-money security interest does not lose it status as such, even if: . . . (3) the purchase-money obligation has been renewed, *refinanced*, consolidated, or restructured (emphasis added).

34.     In the instant case, the 1st DOT qualifies as a purchase money obligation. Plaintiff did not increase the amount financed, nor modify the loan in such a way as to affect the value of Citi's lien position.  Thus, applying the statute to this transaction, there was no need for a subordination agreement at all.

35.     Defendant's requirement that Plaintiff subordinate the HELOC to the 1st DOT is a misrepresentation of the law, represented to Plaintiff as fact, and which Plaintiff relied upon in agreeing to pay the subordination fee.

36.     The acts of Defendant Citi are violations of Section 407.020, RSMo, for attempting to use deception, fraud, misrepresentation, and unfair practices to conceal and omit material facts in connection with their provision of services to a Missouri resident for personal purposes, all of which resulted in pecuniary loss to Plaintiff.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant for actual and punitive damages, the costs of this action, including attorney's fees and that this Court grant her such other and further relief as the Court may deem just and proper.

7

**EXHIBIT A**

## COUNT III

### FRAUD

37.     Plaintiff re-alleges and incorporates by reference herein all of the allegations set forth in paragraphs 1 through 36, above.

38.     Defendant was fully aware, before issuing required disclosures and making representations to Plaintiff to induce them to enter into the subject transaction, that they would impose additional, hidden, and undisclosed fees just prior to closing and at a point where Plaintiffs were committed to the transaction.

39.     Defendant then knowingly and arbitrarily sprung upon Plaintiffs a fee for doing that which it had already agreed to do.

40.     This type of last-minute fee income generation was used by Defendant Citi as a means to generate additional income from this consumer transaction where the plaintiff consumer is not in a position to decline payment without jeopardizing a much larger transaction to which they are already committed.

41.     Such imposition and disclosure of this hidden fee was knowingly engaged in by Defendant Citi in order to generate "income" from the Plaintiffs for doing what had already been done, or agreed to be done.

42.     Such conduct is an act of common law fraud.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant for actual and punitive damages, the costs of this action, including attorney's fees and that this Court provide her with such other and further relief as the Court may deem just and proper.

EXHIBIT A

## COUNT IV

### VIOLATION OF MISSOURI SECOND MORTGAGE LOAN ACT

43.    Plaintiff re-alleges and incorporates by reference herein all of the allegations set forth in paragraphs 1 through 44, above.

44.    Section 408.231, RSMo, states in subsection (1): A "second mortgage loan" shall mean a loan secured in whole or in part by a lien upon any interest in residential real estate created by a security instrument, including a mortgage, trust deed, or other similar instrument or document, which provides for interest to be calculated at the rate allowed by the provisions of Section 408.232, RSMo, which residential real estate is subject to one or more prior mortgage loans. Subsection (3) states: "Residential real estate" shall mean any real estate used or intended to be used as a residence by not more than four families, notwithstanding the provisions of Section 408.015."

45.    The HELOC is a second mortgage loan, secured by Residential real estate, as those terms are defined under Section 408.231, and thus subject to the provisions of Chapter 408 RSMo.

46.    Section 408.233 sets forth what Additional Charges are authorized, or which can be charged to a borrower, in connection with a second mortgage loan. A subordination fee is not listed as an authorized additional charge.

47.    Defendant Citi's charge of a subordination fee is a violation of Section 408.233.

48.    A violation of Section 408.233 is subject to the Penalties set forth in Section 408.240. In addition, Plaintiff is entitled to actual damages under Section 408.562, as well as punitive damages and attorneys fees within the discretion of the trial court.

9

EXHIBIT A

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant for actual and punitive damages, the costs of this action, including attorney's fees and that this Court provide her with such other and further relief as the Court may deem just and proper.

**BICK & KISTNER, P.C.**

By: _Ξ K te_

Elkin L. Kistner             #35287
101 South Hanley Road, Suite 1280
St. Louis, Missouri 63105
Telephone:  (314) 571-6823
Facsimile:  (314) 727-9071
E-mail: elkinkis@bick-kistner.com
*Co-Counsel for Plaintiff Cynthia K. Davis*

**LAW OFFICES OF DAVIS & GARVIN**

James W. Davis              #36921
325 N. Kirkwood Road, Suite 210
St. Louis, Missouri 63122
Telephone:  (314) 822-8100 Ext. 22
Facsimile:  (314) 965-3369
E-mail: jdavis@davisgarvinlaw.com
*Co-Counsel for Plaintiff Cynthia K. Davis*

**ROBERTS, WOOTEN & ZIMMER, L.L.C.**

Kevin C. Roberts            #31578
P.O. Box 888
Hillsboro, Missouri 63050
Telephone:  (636) 797-2693
E-mail: kevinroberts@rwzlaw.com
*Co-Counsel for Plaintiff Cynthia K. Davis*

10

EXHIBIT A

# Book:19736 - Page:1026





\* <span>▮▮▮▮▮▮▮▮▮▮▮▮▮</span> \*

## JANICE M. HAMMONDS, RECORDER OF DEEDS
### ST. LOUIS COUNTY MISSOURI
#### 41 SOUTH CENTRAL, CLAYTON, MO 63105

| TYPE OF INSTRUMENT | GRANTOR | TO | GRANTEE |
|---|---|---|---|
| DT | DAVIS JAMES W ETUX | | JPMORGAN CHASE BANK N A |

PROPERTY DESCRIPTION:      SEC 21 TWN 45 R 6

| Lien Number | Notation | Locator |
|---|---|---|
| | | |

**NOTE:** I, the undersigned Recorder of Deeds, do hereby certify that the information shown on this Certification Sheet as to **TYPE OF INSTRUMENT, the NAMES** of the **GRANTOR and GRANTEE** as well as the **DESCRIPTION** of the **REAL PROPERTY** affected is furnished merely as a convenience only, and in the case of any discrepancy of such information between this Certification Sheet and the attached Document, the **ATTACHED DOCUMENT** governs. Only the DOCUMENT NUMBER, the DATE and TIME of filing for record, and the **BOOK** and **PAGE** of the recorded Document is taken from this CERTIFICATION SHEET.

### RECORDER OF DEEDS DOCUMENT CERTIFICATION

STATE OF MISSOURI   )
                                     SS.
COUNTY OF ST. LOUIS )

| Document Number |
|---|
| **00553** |

I, the undersigned Recorder of Deeds for said County and State, do hereby certify that the following and annexed instrument of writing, which consists of _____ 20 ___ pages, (this page inclusive), was filed for record in my office on the __ 10 __ day of ___ November ____ 2011 __ at __ 12:22PM __ and is truly recorded in the book and at the page number printed above.

In witness whereof I have hereunto set my hand and official seal the day, month and year aforesaid.

**EE**
Deputy Recorder



*Janice M. Hammonds*

St. Louis County, Missouri

Mail to:

> Title Source, Inc.
> 1450 W. Long Lake, Suite 400
> Troy, MI 48098



**EXHIBIT**

Destination code:      4002

RECORDING FEE   78.00
(Paid at the time of Recording)

EXHIBIT A

Book:19736 - Page:1027

**Document Title:** Deed of Trust

**Document Date:** October 26, 2011

**Grantor(s):** JAMES W DAVIS, CYNTHIA K Davis

**Grantor's Address:** 9112 WHITE AVE, SAINT LOUIS, MO 63144

**Grantee(s):** JPMorgan Chase Bank, N.A.

**Grantee's Address:** 1111 Polaris Parkway, Floor 4J, Columbus, OH 43240

**Full Legal Description is located on page:** | 9

**Reference Book(s) and Page(s), if required:**



MISSOURI - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3026 1/01
VMP®                                                                                          09/10
Wolters Kluwer Financial Services                                    Initials:                Page 1 of 18

EXHIBIT A

Book:19736 - Page:1028

**Return To:** JPMorgan Chase Bank, N.A.
Collateral Trailing Documents, P.O. Box 8000 -
Monroe, LA 71203

## Deed of Trust

**Definitions.** Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** *"Security Instrument"* means this document, which is dated October 26, 2011, together with all Riders to this document.

**(B)** *"Borrower"* is JAMES W. DAVIS AND CYNTHIA K. DAVIS, HUSBAND AND WIFE whose address is 9112 WHITE AVE, SAINT LOUIS, MO 63144. Borrower is the trustor under this Security Instrument.

**(C)** *"Lender"* is JPMorgan Chase Bank, N.A.. Lender is a National Banking Association organized and existing under the laws of the United States. Lender's address is 1111 Polaris Parkway, Floor 4J, Columbus, OH 43240 . Lender is the beneficiary under this Security Instrument.

**(D)** *"Trustee"* is Lisa H. McGuff. Trustee's address is 1390 Timberlake Manor Pkwy, Chesterfield, MO 63017.

**(E)** *"Note"* means the promissory note signed by Borrower and dated October 26, 2011. The Note states that Borrower owes Lender three hundred ninety thousand five hundred and 00/100 Dollars (U.S. $390,500.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than November 1, 2041.

**(F)** *"Property"* means the property that is described below under the heading "Transfer of Rights in the Property."

**(G)** *"Loan"* means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)** *"Riders"* means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider  ☐ Condominium Rider  ☐ Second Home Rider
☐ Balloon Rider  ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider  ☐ Biweekly Payment Rider  ☐ Other(s) [specify]

MISSOURI - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®
Wolters Kluwer Financial Services

Form 3026 1/01
09/10

Initials:

Page 2 of 18



EXHIBIT A

Book:19736 - Page:1029

**(I)** *"Applicable Law"* means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** *"Community Association Dues, Fees, and Assessments"* means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** *"Electronic Funds Transfer"* means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** *"Escrow Items"* means those items that are described in Section 3.

**(M)** *"Miscellaneous Proceeds"* means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** *"Mortgage Insurance"* means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** *"Periodic Payment"* means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** *"RESPA"* means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, RESPA refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** *"Successor in Interest of Borrower"* means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**Transfer of Rights in the Property.** This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants, bargains, sells, conveys and confirms to Trustee, in trust, with power of sale, the following described property located in the COUNTY [Type of Recording Jurisdiction] of St Louis [Name of Recording Jurisdiction]: SEE ATTACHED LEGAL DESCRIPTION See Attached

Parcel ID Number: 21K440838, 21K440957 which currently has the address of 9112 WHITE AVE [Street] SAINT LOUIS [City], Missouri 63144 [Zip Code] ("Property Address"):

MISSOURI - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®
Wolters Kluwer Financial Services

Initials:

Form 3026 1/01
09/10

Page 3 of 18

EXHIBIT A

# Book:19736 - Page:1030

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**Uniform Covenants.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts

MISSOURI - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®
Wolters Kluwer Financial Services

Initials: _____

Form 3026 1/01
09/10

Page 4 of 18

EXHIBIT A

shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.



MISSOURI - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®
Wolters Kluwer Financial Services

Form 3026 1/01
09/10

Initials: _____

Page 5 of 18

EXHIBIT A

# Book:19736 - Page:1032

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term

MISSOURI - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®
Wolters Kluwer Financial Services

Form 3026 1/01
09/10

Initials:

Page 6 of 18

EXHIBIT A

of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.



MISSOURI - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®
Wolters Kluwer Financial Services

Initials: _cd_

Form 3026 1/01
09/10

Page 7 of 18

EXHIBIT A

## Book:19736 - Page:1034

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to

MISSOURI - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®
Wolters Kluwer Financial Services

Form 3026 1/01
09/10

Initials: _____

Page 8 of 18



EXHIBIT A

enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.



MISSOURI - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®
Wolters Kluwer Financial Services

Form 3026 1/01
09/10

Initials: _____ Page 9 of 18

EXHIBIT A

# Book:19736 - Page:1036

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(A) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(B) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.



MISSOURI - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®
Wolters Kluwer Financial Services

Form 3026 1/01
09/10

Initials: _____

Page 10 of 18

EXHIBIT A

# Book:19736 - Page:1037

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising

---

MISSOURI - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®
Wolters Kluwer Financial Services

Form 3026 1/01
09/10

Initials: _cd_

Page 11 of 18

EXHIBIT A

# Book:19736 - Page:1038

any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.



MISSOURI - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®
Wolters Kluwer Financial Services

Form 3026 1/01
09/10

Initials: Page 12 of 18

EXHIBIT A

## Book:19736 - Page:1039

There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants

MISSOURI - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®
Wolters Kluwer Financial Services

Form 3026 1/01
09/10

Initials: _____

Page 13 of 18

EXHIBIT A

# Book:19736 - Page:1040

or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an



MISSOURI - Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3026 1/01
09/10

Initials: _____

Page 14 of 18

EXHIBIT A

## Book:19736 - Page:1041

"Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**Non-Uniform Covenants.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall mail copies of a notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Trustee, without demand on Borrower, shall

MISSOURI - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®
Wolters Kluwer Financial Services

Form 3026 1/01
09/10

Initials: _____   Page 15 of 18

**EXHIBIT A**

Book:19736 - Page:1042

sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property to any later time on the same date by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Lease of the Property.** Trustee hereby leases the Property to Borrower until this Security Instrument is either satisfied and released or until there is a default under the provisions of this Security Instrument. The Property is leased upon the following terms and conditions: Borrower, and every person claiming an interest in or possessing the Property or any part thereof, shall pay rent during the term of the lease in the amount of one cent per month, payable on demand, and without notice or demand shall and will surrender peaceable possession of the Property to Trustee upon default or to the purchaser of the Property at the foreclosure sale.

**26. Homestead Exemption.** Borrower hereby waives all homestead exemptions in the Property to which Borrowers would otherwise be entitled under Applicable Law.

**27. Notice. Oral agreements or commitments to loan money, extend credit or to forebear from enforcing repayment of debt including promises to extend or renew such debt are not enforceable. To protect you (Borrower(s)) and us (Creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**



EXHIBIT A

# Book:19736 - Page:1043

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**Borrower**

_____    10-26-11
**JAMES W DAVIS**                    **Date**
                                     *Seal*

_____    10-26-11
**CYNTHIA K Davis**                  **Date**
                                     *Seal*

MISSOURI - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®
Wolters Kluwer Financial Services

Initials: _____

Form 3026 1/01
09/10

Page 17 of 18



EXHIBIT A

# Book:19736 - Page:1044

**Acknowledgment**

**State of Missouri**

**County of St Louis**

On _10/26/2011_____ before me personally appeared


JAMES W. DAVIS and CYNTHIA K. DAVIS, husband and wife


to me known to be the person (or persons) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

*John C. McNease Jr.*
*Notary Public*
*My commission expires:* 04-05-2015

(Seal)

> JOHN C. MCNEASE, JR.
> Notary Public-Notary Seal
> State of Missouri, Saint Louis City
> Commission # 11031041
> My Commission Expires Apr 5, 2015

MISSOURI - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®
Wolters Kluwer Financial Services

Form 3026 1/01
09/10

Initials:

Page 18 of 18



**EXHIBIT A**

Book:19736 - Page:1045

EXHIBIT A - LEGAL DESCRIPTION

Tax Id Number(s): 21K440957

Land Situated in the City of St. Louis in the State of MO

PART OF LOT 3 OF THE SUBDIVISION OF THE HOMESTEAD TRACT IN THE JAMES WILGUS ESTATE
PARTITION IN SECTION 21 TOWNSHIP 45 NORTH, RANGE 6 EAST, IN ST. LOUIS COUNTY, MISSOURI AND
DESCRIBED AS:  BEGINNING AT A POINT IN THE SOUTH LINE OF WHITE AVENUE, 40 FEET WIDE, AS
DEDICATED BY INSTRUMENT RECORDED IN BOOK 1276 PAGE 183, AT THE NORTHEAST CORNER OF
TRACT ACQUIRED BY EDWARD HERRMANN AND WIFE, BY DEED RECORDED IN BOOK 1426 PAGE 201,
THENCE ON THE EAST LINE OF SAID TRACT ACQUIRED BY HERRMANN, SOUTH 1 DEGREE 16 MINUTES
WEST 127 FEET TO A POINT, THENCE EAST AND PARALLEL WITH THE SOUTH LINE OF WHITE AVENUE 43
FEET TO A POINT, THENCE NORTH 1 DEGREE 16 MINUTES EAST 127 FEET TO A POINT IN THE SOUTH
LINE OF WHITE AVENUE, AND THENCE WEST ON SAID SOUTH LINE OF WHITE AVENUE 48 FEET TO THE
POINT OF BEGINNING.

Commonly known as:   9112 White Avenue , Saint Louis, MO 63144

EXHIBIT A

# citibank

# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

Borrower(s):    CYNTHIA K. DAVIS

Property Address: 9112 WHITE AVENUE, SAINT LOUIS, MO 63144 (the "Property")

| | |
|---|---|
| Credit Limit: | $108,500.00 |
| Index: | 8.250% |
| Initial Margin (if applicable): | Not Applicable |
| Initial Daily Periodic Rate (if applicable): | Not Applicable |
| Initial ANNUAL PERCENTAGE RATE (if applicable): (The Initial Annual Percentage Rate will vary as the Index varies) | Not Applicable |
| Date the Initial Margin Ends and Regular Margin Begins (if applicable): | Not Applicable |
| Regular Margin: | 1.375% |
| Regular Daily Periodic Rate: | 0.026370% |
| Regular ANNUAL PERCENTAGE RATE: (The Regular Annual Percentage Rate will vary as the Index varies) | 9.625% (Index +/- the Regular Margin) |

| | | | |
|---|---|---|---|
| Mortgage Broker Fee (Finance Charge) Paid by Borrower: | $0.00 | Mortgage Broker Fee Paid by Lender: | $1,000.00 |

**Borrower Charges Paid Outside of Closing (Finance Charge)**

| | | | |
|---|---|---|---|
| Broker – Processing Fee: | $0.00 | Broker – Origination Fee: | $0.00 |
| Broker – Courier / Freight / Postage: | $0.00 | Broker – Appraisal Fee: | $0.00 |
| Broker – Application Fee: | $0.00 | Broker – Credit Report Fee: | $0.00 |
| Broker – Administration Fee: | $0.00 | Broker – Other: | $0.00 |

**Closing Costs, Paid by Citibank\***

| | | | |
|---|---|---|---|
| Appraisal Fee: | $0.00 | Recording Fees: | $54.00 |
| Credit Report Fee: | $2.00 | City/County Tax/Stamps: | $0.00 |
| Flood Certification Fee (Finance Charge): | $4.25 | State Tax/Stamps: | $0.00 |
| Settlement or Closing Fee (Finance Charge): | $350.00 | Intangible Tax: | $0.00 |
| Abstract or Title Search Fee: LVI | $50.00 | Document Stamp Tax: | $0.00 |
| Title Examination Fee: | $0.00 | Mortgage Registration Tax: | $0.00 |
| Title Insurance Binder: | $0.00 | Tax Certificate Fee: | $0.00 |
| Document Preparation: | $0.00 | Mortgage Taxes:   Borrower Portion | $0.00 |
| Overnight/Postage Fee (Finance Charge): | $0.00 | Lender's Portion | $0.00 |
| Appraisal Recertification Fee: | $0.00 | Environmental Risk Assessment Fee | $0.00 |

| | |
|---|---|
| **Total Closing Costs:** | $460.25 |

\*With the exception of the Environmental Risk Assessment Fee, these charges are paid outside of closing by Lender. However, if your loan is terminated within the first 36 months, with the exception of the Lender's Portion of the Mortgage Taxes and the Document Preparation Fee, you will be required to repay us all of these closing costs incurred on your behalf. The Environmental Risk Assessment Fee will be paid outside of closing by Borrower.

The undersigned Borrower(s), jointly and severally if more than one, agree to all of the terms and conditions of this Home Equity Line of Credit Agreement and Disclosure, which consists of 10 pages, and acknowledge receipt of a completed copy, along with the notice about Your Billing Rights.  The date of this Agreement is the latest date next to a Borrower's signature.

03/13/2007
_____

CYNTHIA K. DAVIS
_____



EXHIBIT
2

EXHIBIT A

**citibank**

# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

1. **DEFINITIONS:** As used herein:

   a) "Account" means the Home Equity Line of Credit Account opened under the Agreement.

   b) "Agreement" means this Home Equity Line of Credit Agreement and Disclosure together with any modifications, amendments, replacements or substitutions thereto.

   c) "Business Day" means any day other than a Saturday, Sunday or a federal holiday.

   d) "Citibank" means Citibank, N.A.

   e) "Credit Limit" means the maximum aggregate amount of the Loan Advances that may be outstanding at any given time pursuant to the Agreement.

   f) "Draw Period" means the ten years from the date of the Agreement during which Loan Advances may be made.

   g) "Index" means the highest Prime Rate as published in the Money Rates section of *The Wall Street Journal* from time to time. *The Wall Street Journal* is available at many newsstands and public libraries, or you may obtain copies from The Wall Street Journal, 200 Burnett Road, Chicopee, Massachusetts 01020. A Prime Rate is not necessarily the lowest or best rate available.

   h) "Initial Pricing" means that your Agreement has an Initial Margin, Initial Daily Periodic Rate, and an Initial Annual Percentage Rate.

   i) "Loan Advances" means amounts drawn on your Account pursuant to the Agreement by Home Equity Line of Credit checks, or in any other way Citibank allows, and advances by Citibank pursuant to the Agreement or Mortgage to protect the Property or Citibank's security interest in the Property, including but not limited to advances to maintain required insurance on the Property or to pay taxes on the Property.

   j) "Mortgage" means the mortgage, deed of trust, deed to secure debt or cooperative security agreement which covers the Property which secures the Agreement.

   k) "Property" means the property described in the Mortgage which secures the Agreement.

   l) "Repayment Period" means the twenty years immediately following the Draw Period during which Loan Advances may not be made.

   m) "You," "Your" and "Yours," whether or not the first letter of the word is capitalized, means each person who signs below as Borrower, jointly and severally.

   Certain other terms are defined elsewhere in this Agreement.

2. **PROMISE TO PAY:** You promise to pay to Citibank the total of all Closing Costs (if indicated above that Closing Costs are paid by Borrower), all Loan Advances, together with Finance Charges at the applicable daily periodic rate, and any other fees, charges or other Finance Charges, all as provided for in the Agreement.

3. **HOW FINANCE CHARGES ARE IMPOSED AND DETERMINED:**

   a) Finance Charges on Loan Advances at the applicable Daily Periodic Rate begin to accrue on the date the Loan Advance is posted to your Account. There is no grace period for repayment of your balance during which Finance Charges will not accrue. If there are any other Finance Charges payable under the Agreement, they will be dollar amounts itemized herein as Finance Charges and will be due and payable on the date of the Agreement.

   b) The appropriate margin is added to the Index to determine the Annual Percentage Rate, which will be divided by 365 (366 in leap years) to determine the Daily Periodic Rate which will be applied to the balance on which the Finance Charge will be computed during your monthly billing cycle.

EXHIBIT A

**citibank**

# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

c)  The Index used for a billing cycle will be the daily Index rate published each Business Day.

d)  If your Account has Initial Pricing:

    (i)  The Initial Margin shown above will be in effect from the date of the Agreement until the Date the Initial Margin Ends and Regular Margin Begins shown above.

    (ii)  The Initial Annual Percentage Rate and the Initial Daily Periodic Rate, shown above, will be in effect from the date of the Agreement and can change each Business Day.

    (iii)  On the Date the Initial Margin Ends and Regular Margin Begins shown above, the Regular Margin shown above will go into effect. If the Index has not changed so as to affect the rate, the Regular Annual Percentage Rate and Regular Daily Periodic Rate shown above will then be in effect and can change each Business Day.

e)  If your Account does not have Initial Pricing:

    (i)  The Regular Margin shown above will be in effect from the date of the Agreement.

    (ii)  The Regular Annual Percentage Rate and the Regular Daily Periodic Rate will be in effect from the date of the Agreement and can change each Business Day.

f)  Any increase in the Annual Percentage Rate will result in an increase in the minimum monthly payment. The Annual Percentage Rate will not exceed 18%, no matter how much the Index increases.

g)  You will be sent statements on a monthly cycle which will reflect your Account activity and any amounts you owe Citibank. The amount of the Finance Charge in your statements will be calculated by multiplying the daily periodic rate for the day by the daily balance for your Account at the end of each day in the monthly billing cycle. The resulting Finance Charges for each day are totaled at the end of the statement period and disclosed on the statement as "Finance Charges – Interest". To determine the daily balance Citibank takes the beginning balance of your Account each day, adds any new Loan Advances and other charges, and subtracts any payments and credits. Late Fees, credit life insurance, if any, and unpaid Finance Charges will not be counted as part of the daily balance for purposes of calculating the Finance Charge.

h)  Payments are applied first to due and unpaid Finance Charges and other charges and then to the unpaid balance of Loan Advances.

4.  **FINANCE CHARGES NOT DUE TO DAILY PERIODIC RATE; CLOSING COSTS:**

  a)  If you retained a mortgage broker, the amount of the mortgage broker fee, if any, is a Finance Charge. The amount of the mortgage broker fee is determined by your agreement with your mortgage broker and is not required by Citibank or paid by Citibank.

  b)  If you agreed to pay the Closing Costs for your Account, your Closing Costs include Finance Charges in the amounts shown on page one of this Agreement for the cost of flood and tax certifications, overnight courier fees, and the cost charged by Citibank's attorneys or closing agents to conduct the closing for your Account.

5.  **OTHER CHARGES:** These are charges other than Finance Charges. These charges are not counted as part of your daily unpaid balance of Loan Advances for purposes of computing Finance Charges:

  a)  Annual Fee. There is a $50 Annual Fee associated with your Account. This fee will automatically be charged to your Account in the same manner as a Loan Advance beginning on the first anniversary of your Account opening and annually thereafter.

  b)  Late Fee. If Citibank does not receive the full amount of any monthly payment due within 15 calendar days of the due date, you will be charged a Late Fee equal to the greater of 6% of the overdue payment or $5. However, you will not be charged a Late Fee on an unpaid Late Fee.

**EXHIBIT A**

# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE       citibank

c) **Overlimit Fee.** If there is a Loan Advance which causes your Credit Limit to be exceeded, Citibank will charge you a $25 overlimit fee. This charge will not be imposed on more than one transaction in any monthly billing cycle.

d) **Stop Payment Fee.** If you request Citibank to stop payment on one of your Home Equity Line of Credit Checks, Citibank will charge you an $8 stop payment charge per request.

e) **Returned Item Fee.** If your payment is returned unpaid for any reason, Citibank will charge you a $25 returned item fee.

f) **Early Closure Release Fee.** If Citibank pays the closing costs to open your Account and, within 36 months of the date of this Agreement, you request that your Account be closed or take any other action which will result in a release of the Mortgage, you agree to pay an early closure release fee which will consist of all costs Citibank incurred to open your Account. These costs are disclosed as Closing Costs on the first page of this Agreement. The amount of this fee will be automatically charged to your Account in the same manner as a Loan Advance.

g) **Other Fees Disclosed in Agreement.** Any charges imposed by Citibank, if any, in connection with your Account are disclosed above at the beginning of the Agreement and in Section 13 below.

h) **Other Fees Disclosed in Mortgage.** You agree to pay any other fees or charges provided for in the Mortgage or otherwise provided for in the Agreement.

i) **Fee to Release Prior Lien.** You may have to pay a fee to release a prior lien or security interest in the Property.

You agree to pay any reasonable costs incurred by Citibank in connection with the enforcement of its rights and remedies under the Agreement and the Mortgage, including, but not limited to, any reasonable attorneys' fees and other collection costs.

6. **SECURITY INTEREST IN PROPERTY:** As security for the Agreement, you are giving Citibank a security interest in the Property located at the address shown above, which security interest secures all of your obligations under this Agreement and the Mortgage. This Property is more fully described in the Mortgage you will sign along with this Agreement. Collateral which secures other obligations to Citibank may also secure the Agreement.

7. **PAYMENT TERMS:** You agree to pay your monthly payments by the due date shown on your monthly statement. During the Draw Period, you agree to pay a minimum monthly payment, which will be shown on your monthly statement, and which will equal the sum of any past due or over Credit Limit amounts plus accrued and unpaid Finance Charges and other unpaid fees or charges imposed pursuant to the Agreement. Your paying this minimum monthly payment will not reduce the principal balance of Loan Advances which you owe Citibank, except to the extent over Credit Limit amounts are paid. During the Repayment Period, you agree to pay a monthly payment, which will be shown on your monthly statement, and which will equal the Finance Charges that have accrued on the outstanding balance for the billing period, plus principal equal to the greater of $50 or 1/240th of your principal balance of Loan Advances as of the end of the Draw Period, plus the sum of the following amounts when applicable: past due amounts on your Account, amount owing in excess of your Credit Limit, Late Fees and other charges imposed pursuant to the Agreement. On the last payment due date of the Repayment Period, any remaining unpaid amounts owed Citibank will be due and payable. You may prepay your Account in whole or in part at any time without penalty, but if you request that your Account be closed or take any other action which will result in a release of the Mortgage, you may owe an early closure release fee as provided for in the OTHER CHARGES section. Loan Advances may not be drawn to make payments on the Account. Citibank may accept late payments or partial payments, even though marked "payment in full," without losing any of Citibank's rights under the Agreement.

8. **TRANSACTION REQUIREMENTS:** You may draw Loan Advances during the Draw Period up to your Credit Limit if your Account has not been closed or suspended or your Credit Limit reduced to where further Loan Advances would not be permitted.

9. **TERMINATION OF ACCOUNT BY CITIBANK:** Citibank may close your Account, and require payment of the outstanding balance in full in a single payment, if:

a) You fail to meet the repayment terms of the Agreement for any outstanding balance.

b) There has been fraud or a material misrepresentation by you in connection with the Account.



EXHIBIT A

**citibank**

# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

c) You take any action or fail to take any action which adversely affects the Property or Citibank's security interest in the Property, including but not limited to: a transfer of title to the Property or sale of the Property without Citibank's written permission; a failure to maintain any required insurance on the Property; failure to pay taxes on the Property; you permit the filing of a lien senior to that held by Citibank; the sole Borrower obligated on the Account dies; the Property is taken through eminent domain; a prior lien-holder forecloses; you commit waste or otherwise destructively use or fail to maintain the Property in a way that adversely affects the Property; there is illegal use of the Property which could subject the Property to seizure; one of two Co-Borrowers dies and Citibank's security is thereby adversely affected; or you move out of the Property and Citibank's security is thereby adversely affected.

d) You are or become an "executive officer" of Citibank as defined in Federal Reserve Board Regulation O and Citibank determines to require payment in full to comply with federal regulation.

In addition to the foregoing, Citibank shall have the right to exercise any and all of it rights and remedies allowed by law or as set forth in this Agreement or in the Mortgage, including, but not limited to, the right to bring an action against you and the right to bring a foreclosure action against the Property.

**10.   SUSPENSION OF ACCOUNT OR REDUCTION OF CREDIT LIMIT BY CITIBANK:** Citibank may prohibit additional extensions of credit or reduce your Credit Limit during any period in which:

a) You or any of you request a suspension of the Account or reduction of the Credit Limit.

b) The maximum Annual Percentage Rate is reached.

c) The value of the Property declines significantly below the Property's appraised value for purposes of the Account. As an example, if the value of the Property declines such that the initial difference between the Credit Limit and the available equity (based on the Property's appraised value) is reduced by fifty percent, such an event would constitute a significant decline in the value of the Property.

d) Citibank reasonably believes that you will be unable to fulfill the repayment obligations under the Agreement because of a material change in your financial circumstances.

e) You are in default of any material obligation under the Agreement or Mortgage.

f) Citibank is precluded by government action from imposing the Annual Percentage Rate provided for in the Agreement.

g) The priority of Citibank's security interest is adversely affected by government action to the extent that the value of the security interest is less than 120% of the Credit Limit.

h) Citibank is notified by its regulatory agency that continued advances constitute an unsafe and unsound practice.

If any of the above circumstances change during the Draw Period and you want to reopen your Account or increase your Credit Limit to the original Credit Limit, you must make such a request to Citibank in writing and pay any bona fide and reasonable appraisal and credit report fees actually incurred by Citibank to investigate whether the above circumstances continue to exist. If Citibank suspended your Account or reduced your Credit Limit as a result of your request, the request for reinstatement must be signed by all of you.

You agree that you will not attempt to obtain any additional credit extensions once you know that your credit privileges have been terminated or suspended. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations under the Agreement.

**EXHIBIT A**

**citibank**

# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

**11. OTHER CHANGES TO THE ACCOUNT:** Citibank may change the Index and Regular Margin used under the Agreement if the original Index is no longer available, the new index has an historical movement substantially similar to that of the original Index, and the new index and margin would have resulted in an Annual Percentage Rate substantially similar to the rate in effect at the time the original Index became unavailable. Citibank may make a specified change to the Account if you specifically agree to the change in writing at that time. Citibank may make changes to the Account that will unequivocally benefit you throughout the remainder of the Account. Citibank may make insignificant changes in the terms of the Account, including but not limited to: changing the address to which payments are sent; minor changes to features such as the billing cycle date, the payment due date and the day of the month on which Index values are measured; changes in rounding practices within the tolerance rules allowed by applicable regulation; and changes to balance computation methods if the change produces an insignificant difference in the Finance Charge you pay.

**12. PROMOTIONAL RATE OFFERS:** At Citibank's discretion, Citibank may offer you a promotional rate (a promotional daily periodic rate and/or promotional margin). The period of time for which the promotional rate applies may be limited. Citibank will allocate your payments and credits to pay off balances at low promotional rates before paying off balances at higher periodic rates. Any promotional rate, the corresponding periodic rate, and the period of time during which it is in effect will be disclosed to you. Any promotional rate offer will be subject to the terms of the offer and this Agreement.

**13. OPTIONAL CONVERTED BALANCE FEATURE FOR CERTAIN ACCOUNTS:**

*Option to Convert.* Subject to the limitations described below, during the Draw Period and the first 15 years of the Repayment Period, you have the option to convert all or any portion of your Account balance to a fixed Annual Percentage Rate and Daily Periodic Rate for a fixed term. The Annual Percentage Rate does not include costs other than interest. Your exercise of your option to convert is subject to your meeting all of the conditions described below at the time that the fixed rate becomes effective.

*Conversion Requirements.* Each balance you convert to a fixed rate (the "Converted Balance") must be for a minimum amount of $10,000.00. The aggregate unpaid amount of all your Converted Balances may not exceed $500,000.00. However, Citibank may, in its sole discretion and without prior notice, allow the aggregate unpaid amount of all your Converted Balances to exceed $500,000.00. Citibank's decision to allow the aggregate unpaid amount of all your Converted Balances to exceed $500,000.00 for any fixed rate conversion does not obligate it to allow the aggregate unpaid amount of all your Converted Balances to exceed $500,000.00 for any subsequent fixed rate conversion. Each Converted Balance may consist of any portion of the variable rate balance of your Account, any portion of any existing Converted Balance, or both. You may have outstanding a maximum of three (3) Converted Balances at any one time and you may not establish more than five (5) Converted Balances during the term of your Account. At the time of each conversion, you will designate the term for repayment of the Converted Balance. The term for repayment of the Converted Balance will be between 12 to 359 months, but must not exceed the last payment due date of the Repayment Period. You must sign all documentation requested by Citibank on a timely basis in order to effectuate a conversion to a fixed rate. Each conversion to a fixed rate will be effective on the first day of the monthly billing cycle that follows Citibank's receipt and processing of that documentation. You may not use your conversion option to establish a fixed rate for a new Loan Advance drawn on the Account. If you wish to authorize Citibank to pay your minimum monthly payments automatically from your checking or other authorized account, you must authorize Citibank to do so for all of your minimum monthly payments on all of your Converted Balances and the variable rate balance of your Account, and any cancellation or change with respect to that authorization will apply to all of your Converted Balances and the variable rate balance of your Account.

*Credit Limit.* The portion of your Credit Limit that is available for other Loan Advances will be reduced by the aggregate amount of unpaid Converted Balances. As you repay the principal of each Converted Balance, your available Credit Limit will be replenished in like amounts, subject to the conditions that generally apply to your right to obtain Loan Advances under the terms of this Agreement.

*Conversion Fees.* We may charge you $50 each time you elect to convert a portion of your Account balance to a fixed rate.

*Fixed Annual Percentage Rate and Daily Periodic Rate.* The **Annual Percentage Rate** for each Converted Balance shall be fixed and will be determined based upon the value of a margin (the "Conversion Margin") and an index (the "Conversion Index"), which are described below. Citibank will add the Conversion Margin to the Conversion Index to determine the Annual Percentage Rate for the Converted Balance. The maximum **Annual Percentage Rate** that can apply to a Converted Balance is 18%. The Daily Periodic Rate for the Converted Balance will be equal to the **Annual Percentage Rate** for the Converted Balance divided by 365 (366, in a leap year).

EXHIBIT A

**citibank**

# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

*Calculation of Periodic Finance Charges.* The periodic Finance Charge on each Converted Balance for each monthly billing cycle will be calculated as follows. First, Citibank will determine the "daily Converted Balance" for each day of the monthly billing cycle. To determine the "daily Converted Balance," Citibank will take the beginning balance of the Converted Balance each day and subtract any payments and credits relating to that Converted Balance that are received that day. Late Fees, credit life insurance, if any, and unpaid Finance Charges will not be counted as part of the daily Converted Balance for purposes of calculating the periodic Finance Charge. Second, Citibank will multiply the daily Converted Balance for each day in the monthly billing cycle by the Daily Periodic Rate in effect for that day. This will calculate the periodic Finance Charge for each day in the monthly billing cycle. Third, Citibank will add together the resulting amounts, which will be the total periodic Finance Charge for the Converted Balance for the monthly billing cycle.

*The Conversion Index.* The Conversion Index is the 3-year Interest rate swap listed in the Board of Governors of the Federal Reserve System's Federal Reserve Statistical Release H.15 - Selected Interest Rates (Weekly), as most recently available on the effective date of the conversion to a fixed rate. This Federal Reserve publication can be found on the Board of Governors of the Federal Reserve System's internet web site at http://www.federalreserve.gov or may be obtained from the Board of Governors of the Federal Reserve System, Publications Services, 20th Street and Constitution Avenue, NW, Washington, D.C. 20551. If the Conversion Index or any replacement Conversion Index becomes unavailable, Citibank will select a new Conversion Index that will have a historical movement substantially similar to that of the unavailable Conversion Index, and the Conversion Margin will be changed so that the new Conversion Index plus the Conversion Margin will result in a new fixed rate that is substantially similar to the fixed rate that would have applied at the time that the unavailable Conversion Index became unavailable.

*The Conversion Margin.* The Conversion Margin for each Converted Balance shall be determined by us in our sole discretion based upon the term and rate available, at the time of each exercise of your option, for a comparable home equity loan offered by us to customers having line sizes, combined loan to value ratios and credit scores similar to you. A complete disclosure of the terms of that will apply to your Converted Balance shall be provided to you at the time of the conversion.

*Minimum Monthly Payment.* Your minimum monthly payment for each Converted Balance is the amount sufficient to repay the original principal balance of the Converted Balance, together with periodic Finance Charges at the applicable Annual Percentage Rate, in full in substantially equal monthly installments during the scheduled term for repayment of the Converted Balance. The entire outstanding principal balance of the Converted Balance, together with all accrued and unpaid Finance Charges and all other fees and charges relating to the Converted Balance, if not sooner paid, will be due and payable in full in a single payment on the last payment due date of the scheduled term for repayment of the Converted Balance. Citibank is not obligated to refinance this amount. The minimum monthly payment will not change by reason of the commencement of the Repayment Period. The minimum monthly payment is in addition to the minimum monthly payment that is due for the variable rate portion of your Account, as provided in Section 7 above, and will be due on the same payment due dates as are payments for the variable rate portion of your Account.

*Conditions to Exercise of Your Option to Convert.* Your right to exercise your option to convert is subject to your meeting all of the following conditions on the date that the conversion to the fixed rate is effective: (a) your Credit Limit must be for $25,000.00 or more, (b) you must not be in default under any of the provisions of this Agreement and there may not be any defaults under any provisions of the Mortgage, (c) your Account and your right to obtain Loan Advances may not then be terminated or suspended.

14. **TAX IMPLICATIONS:** You should consult a tax advisor regarding the deductibility of interest (Finance Charges) and other charges under the Agreement.

15. **DELAY IN ENFORCEMENT:** Citibank may delay the exercise of Citibank's rights under the Agreement or Mortgage without losing them.

16. **PROPERTY INSURANCE:** You agree to maintain insurance on the Property as provided for in the Mortgage. If Borrower fails to maintain property insurance, Citibank may obtain insurance coverage, at Citibank's option and Borrower's expense. Citibank is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Citibank, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Citibank under this Section shall be considered Loan Advances and become additional debt of Borrower secured by the Mortgage.

EXHIBIT A

# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE                    citibank

17. **CREDIT INFORMATION:** You understand and agree that Citibank may obtain credit reports for credit applications and for updates, renewals or extensions of the credit granted. Upon request, Citibank will inform you if a report has been obtained and will give you the name and address of the agency that furnished the report. You also agree that Citibank may obtain and use credit reports and other information that Citibank has obtained in a lawful manner consistent with Citibank's privacy policies about you for subsequent solicitations or for any other lawful purpose.

18. **FURTHER ASSURANCES:** You agree that, upon Citibank's request, you will promptly execute, acknowledge, initial and deliver to Citibank any documentation Citibank deems necessary to replace or correct any lost, misplaced, misstated or inaccurate document signed by you at closing.

19. **GOVERNING LAW:** The Agreement will be governed by United States federal law and, to the extent the United States federal law is inapplicable, then by the laws of the State of Nevada; except that, with regard to the perfection and enforcement of Citibank's security interest in the Property, the Agreement will be governed by the law of the state where the Property is located.

20. **DUE ON SALE:** The Mortgage or Deed of Trust which covers the Property contains substantially the following provision: Due on Transfer Provision -- Transfer of the Property. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in You is sold or transferred and You are not a natural person) without Citibank's prior written consent, Citibank may, at Citibank's option, require immediate payment in full of all sums secured by this Mortgage or Deed of Trust. However, Citibank shall not exercise this option if the exercise is prohibited by applicable law as of the date of this Mortgage or Deed of Trust. If Citibank exercises this option, Citibank shall give You notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which all sums secured by this Mortgage or Deed of Trust must be paid. If these sums are not paid prior to the expiration of this period, Citibank may invoke any remedies permitted by this Mortgage or Deed of Trust without further notice or demand on You.

21. **CHANGE IN NAME, ADDRESS OR EMPLOYMENT:** You agree to notify us in writing of any change in name, address or employment.

22. **NO WAIVER:** Neither you nor Citibank shall be deemed to have waived any of rights, powers or remedies hereunder unless such waiver is embodied in a writing executed by either you or Citibank. The waiver by either you or Citibank of any breach or default by the other party to the Agreement in the performance of any obligation hereunder shall not constitute a waiver of any subsequent breach or default.

23. **NOTICES:** All notices provided for in the Agreement shall be in writing and shall be deemed given (a) when delivered on a Business Day if delivered personally, (b) on the day after deposit with any overnight courier if such date is a Business Day, (c) three days after deposit in the United States mail, if delivered by certified mail, return receipt requested, postage prepaid and addressed to you at the address set forth on the first page of the Agreement or addressed to Citibank at the customer service address shown on your monthly statement.

24. **INVALIDITY CLAUSE:** If any provision of the Agreement shall be otherwise unlawful, void, or for any reason unenforceable, then that provision shall be enforced to the maximum extent permissible so as to effect the intent of you and Citibank. In either case, the remainder of the Agreement shall continue in full force and effect.



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

## YOUR BILLING RIGHTS (KEEP THIS NOTICE FOR FUTURE USE)

This notice contains important information about your rights and Citibank's responsibilities under the Fair Credit Billing Act.

**Notify Citibank in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write to Citibank on a separate sheet at the address listed on your bill. Write to Citibank as soon as possible. Citibank must hear from you no later than 60 days after Citibank sent you the first bill on which the error or problem appeared. You can telephone Citibank, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and Account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized Citibank to pay your Home Equity Line of Credit bill automatically from your checking or other authorized account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach Citibank three business days before the automatic payment is scheduled to occur.

## YOUR RIGHTS AND CITIBANK'S RESPONSIBILITIES AFTER
## CITIBANK RECEIVES YOUR WRITTEN NOTICE

Citibank must acknowledge your letter within 30 days, unless Citibank has corrected the error by then. Within 90 days, Citibank must either correct the error or explain why Citibank believes the bill was correct.

After Citibank receives your letter, Citibank cannot try to collect any amount you question, or report you as delinquent. Citibank can continue to bill you for the amount you question, including Finance Charges, and Citibank can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while Citibank is investigating, but you are still obligated to pay the parts of your bill that are not in question.

If Citibank finds that Citibank made a mistake on your bill, you will not have to pay any Finance Charges related to any questioned amount. If Citibank did not make a mistake, you may have to pay Finance Charges, and you will have to make up any missed payments on the questioned amount. In either case, Citibank will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that Citibank thinks you owe, Citibank may report you as delinquent. However, if Citibank's explanation does not satisfy you and you write to Citibank within ten days telling Citibank that you still refuse to pay, Citibank must tell anyone Citibank reports you to that you have a question about your bill. And, Citibank must tell you the name of anyone Citibank reported you to. Citibank must tell anyone Citibank reports you to that the matter has been settled between you and Citibank when it finally is.

If Citibank does not follow these rules, Citibank cannot collect the first $50 of the questioned amount, even if your bill was correct.

EXHIBIT A



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

## AUTHORIZATION TO CHARGE ACCOUNT – AUTO-DEDUCT SERVICE

By signing below, you authorize Citibank to charge your account described below to pay the minimum amounts due Citibank under the above Home Equity Line of Credit Agreement and Disclosure.

Financial Institution Name: _____

Address: _____

ABA Number: _____

Account type:     [ ] Checking     [ ] Money Market     [ ] Savings

Account Number: _____

_____         _____
Authorized Signature    Date           Authorized Signature    Date

As an option and not a condition to the Agreement, Citibank has offered you the convenience of making payments using pre-authorized payments from a checking or savings account as described.

Your payment will be made automatically on your current due date from your account described above. If your due date falls on a weekend or holiday, your payment will be deducted on the last business day before your due date. If there are insufficient funds in your account, Citibank may debit your account for the payment when sufficient funds are available. Your payment will be made automatically at the minimum due amount, as indicated on your billing statement. Even after you enroll for the auto-deduct service, you should continue to make payments due under your statement until the auto-deduct service is in place for your Account.

Citibank reserves the right to cancel the auto-deduct service for your Account if there are insufficient funds in your Account for any three consecutive scheduled debits or if any payment is 60 days in arrears. Citibank also reserves the right to change the terms and conditions of this Auto Deduct Agreement after 21 days prior notice to you.

YOU MAY ATTACH A COPY OF A VOIDED CHECK OR PREPRINTED DEPOSIT OR WITHDRAWAL SLIP FROM THE ACCOUNT DESCRIBED ABOVE IN WHICH FUNDS ARE TO BE DEBITED FROM.

EXHIBIT A

CITIBANK
Document Administration
1000 Technology Drive - MS 221
O'Fallon, MO  63368-2240

This Instrument Was Prepared By:
**PANKAJ PAVASKAR**

Citibank
P.O. Box 790017, MS 221
St. Louis, MO  63179

APN NO.: ▆▆▆▆▆

ACCOUNT NO.: ▆▆▆▆▆

# HOME EQUITY LINE OF CREDIT DEED OF TRUST

In this Deed of Trust, "You", "Your" and "Yours" means JAMES W. DAVIS AND CYNTHIA K. DAVIS, HIS WIFE ("Trustor"). "We," "Us" and "Our" means CITIBANK, FEDERAL SAVINGS BANK, which has a home office of 11800 Spectrum Center Drive, Reston, VA  22090 (beneficiary). The "Trustee" means RALPH O.COLLINS III or any successor appointed pursuant to paragraph 28 of this Deed of Trust. The "Borrower" means the individual(s) who has(ve) signed the Home Equity Line of Credit Agreement and Disclosure (the "Agreement") of even date herewith and in connection with this Deed of Trust.

The "Property" means the real estate, including the leasehold (if any), located at 9112 WHITE AVENUE, SAINT LOUIS, MO  63144, ST. LOUIS County.

### [SEE ATTACHED LEGAL DESCRIPTION]

THIS DEED OF TRUST between You and Us is made as of the date next to Your first signature below and has a final maturity date 30 years and 2 months from such date.

The Agreement provides that the credit secured by the Property is an open-end revolving line of credit at a variable rate of interest. The maximum amount of all loan advances made to the Borrower under the Agreement and which may be secured by this Deed of Trust may not exceed $108,500.00 (the "Credit Limit"). All future advances made to the Borrower or future obligations of Borrower to Us shall constitute part of the indebtedness secured by this Deed of Trust and shall be governed by and subject to the provisions of Section 443.055 of the Revised Statutes of Missouri. At any particular time, the outstanding obligation of Borrower to Us under the Agreement may be any sum equal to or less than the Credit Limit plus interest and other charges owing under the Agreement and amounts owing under this Deed of Trust. Obligations under the Agreement, Deed of Trust and any riders thereto shall not be released even if all indebtedness under the Agreement is paid, unless and until We cause a reconveyance of the property to be executed to You and such release is properly recorded.

TO SECURE to Us: (a) the payment and performance of all indebtedness and obligations of the Borrower under the Agreement or any modification or replacement of the Agreement; (b) the payment of all other sums advanced in accordance herewith to protect the security of this Deed of Trust, with finance charges thereon at the variable rate described in the Agreement; and (c) the payment of any future advances made by Us to Borrower (pursuant to Paragraph 16 of this Deed of Trust (herein "Future Loan Advances")) and, in consideration of the indebtedness herein recited, You hereby irrevocably grant and convey to the Trustee, in trust, with, if allowed by applicable law, power of sale, the Property.

EXHIBIT A

**Deed of Trust, continued**



TOGETHER WITH all the improvements now or hereafter erected on the Property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to You to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, water rights and water stock, and all fixtures now or hereafter attached to the Property (which, if this Deed of Trust is on a unit in a condominium project or planned unit development, shall include the common elements in such project or development associated with such unit), all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property.

IN WITNESS WHEREOF, YOU HAVE EXECUTED THIS DEED OF TRUST, AND AGREE TO BE BOUND BY ALL TERMS AND CONDITIONS STATED ON PAGES 4 THROUGH 9 FOLLOWING.

|  | 03/13/2007 |  | 03/13/2007 |
|---|---|---|---|
| Trustor: CYNTHIA K. DAVIS | | Trustor: JAMES W. DAVIS | |
| [ ] Married | [ ] Unmarried | [ ] Married | [ ] Unmarried |
| Trustor: | | Trustor: | |
| [ ] Married | [ ] Unmarried | [ ] Married | [ ] Unmarried |
| [ ] Married | [ ] Unmarried | [ ] Married | [ ] Unmarried |
| Witness | Date | Witness | Date |

STATE OF <u>MISSOURI</u>, County of_____, SS:

On this <u>03/13/2007</u> before me personally appeared <u>CYNTHIA K. DAVIS and JAMES W. DAVIS</u> to me known to be the person (or persons) described in, and, who executed the foregoing instrument and acknowledged that he/she or they executed the same as his/her or their free act and deed.

In testimony whereof I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year above written.

My term expires: _____

Notary Public: _____

EXHIBIT A

## Deed of Trust, continued



You covenant that You are lawfully seized of the estate hereby conveyed and have the right to mortgage, grant, and convey the Property, and that the Property is unencumbered, except for the encumbrances of record and any first deed of trust. You covenant that You warrant and will defend generally the title to the Property against all claims and demands, except those disclosed in writing to Us as of the date of this Deed of Trust.

You and We covenant and agree as follows:

**1. Payment of Indebtedness.**  Borrower shall promptly pay when due the indebtedness secured by this Deed of Trust including, without limitation, that evidenced by the Agreement.

**2. Application of Payments.**  Unless applicable law provides otherwise, all payments received by Us under the Agreement will be applied to the principal balance and any finance charges, late charges, collection costs, and other charges owing with respect to the indebtedness secured by this Deed of Trust in such order as We may choose from time to time.

**3. Charges; Liens.**  Except as expressly provided in this Paragraph 3, You shall pay all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any, by Your making payments, when due, directly to the payee thereof. In the event You make payments directly to the payee thereof, upon Our request You shall promptly furnish to Us receipts evidencing such payment.

You shall make payments, when due, on any indebtedness secured by a Deed of Trust or other lien that is prior in right of time to this Deed of Trust (a "Prior Deed of Trust").  You shall promptly discharge the lien of any Prior Deed of Trust not disclosed to Us in writing at the time of application for the Agreement, provided, however, that You shall not be required to discharge any such lien so long as You shall (a) in good faith contest such lien by, or defend enforcement of such lien in, legal proceedings which operate to prevent the enforcement of the lien or forfeiture of the Property or any part thereof, or (b) secure from the holder of such prior lien an agreement in form and substance satisfactory to Us subordinating such lien to this Deed of Trust.  You shall not enter into any agreement with the holder of a Prior Deed of Trust whereby such Prior Deed of Trust, or the indebtedness secured thereby is modified, amended, extended or renewed, without Our prior written consent.  You shall neither request nor allow any future advances to be secured by a Prior Deed of Trust without Our prior written consent.

**4. Hazard Insurance.**  You shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and such other hazards as We may require (including flood insurance coverage, if required by Us) and in such amounts and for such periods as We may require.  Unless We require in writing otherwise, the policy shall provide insurance on a replacement cost basis in an amount not less than that necessary to comply with any coinsurance percentage stipulated in the hazard insurance policy.  All insurance policies and renewals thereof shall be in form and substance and with carriers acceptable to Us and shall include a standard mortgagee clause in favor of and in form and substance satisfactory to Us.  In the event of loss, You shall give prompt notice to the insurance carrier and Us.  We may make proof of loss if not made promptly by You.  If the Property is abandoned by You, or if You fail to respond to Us within thirty (30) days from the date the notice is mailed by Us to You that the insurance carrier offers to settle a claim for insurance benefits, We are authorized to collect and apply the insurance proceeds at Our option either to restoration or repair of the Property, or to sums secured by this Deed of Trust.

If the Property is acquired by Us under Paragraph 14 of this Deed of Trust, all of Your right, title and interest in and to any insurance policies, and in and to the proceeds thereof resulting from damage to the Property prior to the sale or acquisition, shall pass to Us to the extent of the sums secured by this Deed of Trust immediately prior to such sale or acquisition.  The provisions of this Paragraph 4 shall be subject to the provisions of Paragraph 5 if this Deed of Trust covers a unit in a condominium project or planned unit development.

EXHIBIT A

**citibank®**

### Deed of Trust, continued

5. **Preservation and Maintenance of Property; Condominiums and Planned Unit Developments.** If this Deed of Trust is on a unit in a condominium or a planned unit development (herein "Condominium Project"), then: (a) You shall perform all of Your obligations under the declaration or covenants creating or governing the Condominium Project, the by-laws and regulations of the Condominium Project, and all constituent documents (herein "Project Documents"), including the payment when due of assessments imposed by the homeowners association or other governing body of the Condominium Project (herein "Owner's Association"); (b) You shall be deemed to have satisfied the insurance requirements under Paragraph 4 of this Deed of Trust if the Owners Association maintains in full force and effect a "master" or "blanket" policy on the Condominium Project which provides insurance coverage against fire, hazards included within the term "extended coverage" and such other hazards (including flood insurance) as We may require, and in such amounts and for such periods as We may require naming Us as additional loss payee; (c) the provisions of any Project Documents regarding the application of any insurance proceeds from "master" or "blanket" policies covering the Condominium Project shall supersede the provisions of Paragraph 4 of this Deed of Trust to the extent necessary to avoid conflict between the provisions thereof and hereof; (d) You hereby assign to Us the right to receive distributions on account of the Property under "master" or "blanket" policies covering the Condominium Project to the extent not applied to the restoration or repair of the Property, with any such distributions in excess of the amount necessary to satisfy in full the obligations secured by this Deed of Trust being paid to You; (e) You shall give Us prompt written notice of any lapse in any insurance coverage under a "master" or "blanket" policy on the Condominium Project; and (f) You shall not, without Our prior written consent, consent to either (i) the abandonment or termination of the Condominium Project (except for the abandonment or termination provided by law in the case of substantial destruction by fire or other casualty or in the case of a taking or condemnation or eminent domain), (ii) any material amendment to the Project Documents (including any change in the percentage interests of the unit owners in the Condominium Project), or (iii) the effectuation of any decision by the Owners Association to terminate professional management and assume self-management of the Condominium Project. If the Property has rental units, You shall maintain insurance against rent loss in addition to the other hazards for which insurance is required herein.

6. **Protection of Our Security.** If You fail to perform Your obligations under this Deed of Trust, or if any action or proceedings adversely affects Our interest in the Property, We may, at Our option, take any action reasonably necessary (including, without limitation, paying expenses and attorney fees and to have entry upon the Property to make repairs) to perform Your obligations or to protect Our interests. Any amounts disbursed by Us pursuant to this Paragraph 6, with interest thereon at the variable rate described in the Agreement, shall become indebtedness secured by this Deed of Trust (except as expressly provided herein). Nothing contained in this Paragraph 6 shall require Us to incur any expense or take any action hereunder.

7. **Inspection.** We or Our agents may enter and inspect the Property, after giving You reasonable prior notice.

8. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Us. Neither Borrower nor You will be relieved of any obligation to make payments if We apply the award received to the outstanding balance owed.

If You abandon the Property, or if, after notice by Us to You that the condemnor offers to make an award or settle a claim for damages, You fail to respond to Us within thirty (30) days after the date such notice is mailed, We are authorized to collect and apply the proceeds in the same manner as provided in Paragraph 4 hereof.

9. **Forbearance Not a Waiver.** Any forbearance by Us in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy in the future. Any waiver by Us must be in writing and signed by Us.

EXHIBIT A

**Deed of Trust, continued**

**citibank®**

10. **Successors and Assigns Bound; Joint and Several Liability; Captions.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, Your and Our respective successors and assigns, subject to the provisions of Paragraph 13 hereof. All Your covenants and agreements shall be joint and several. The captions and headings of the paragraphs of this Deed of Trust are for convenience only and are not to be used to interpret or define the provisions hereof.

11. **Notices.** Except for any notice required under applicable law to be given in another manner, (a) any notice to You provided for in this Deed of Trust shall be given by personal delivery or by mailing such notice by first-class postage paid, addressed to You at the address of the Property shown at the beginning of this Deed of Trust or at such other address as You may designate by notice to Us as provided herein, and (b) any notice to Us shall be given by personal delivery or by mailing such notice by certified mail, return receipt requested, to Our address stated herein or to such other address as We may designate by notice to You as provided herein.

12. **Severability.** If any term of this Deed of Trust is found to be unenforceable, all other provisions will remain in full force.

13. **Due on Transfer Provision – Transfer of the Property.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in You is sold or transferred and You are not a natural person) without Our prior written consent, We may, at Our option, require immediate payment in full of all sums secured by this Deed of Trust. However, We shall not exercise this option if the exercise is prohibited by applicable law as of the date of this Deed of Trust. If We exercise this option, We shall give You notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which all sums secured by this Deed of Trust must be paid. If these sums are not paid prior to the expiration of this period, We may invoke any remedies permitted by this Deed of Trust without further notice or demand on You.

14. **Default.** If You breach any term in this Deed of Trust, or if Borrower fails to perform any obligation under the Agreement, We may, at Our option, declare all sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale under this Deed of Trust and any other remedies permitted by law. We may collect from You all reasonable costs incurred in enforcing the terms of this Deed of Trust, including attorney's fees and allocated costs of Our salaried employees.

15. **Assignment of Rents.** As additional security hereunder, You hereby assign to Us the rents of the Property; provided, however, that You shall have, prior to acceleration under Paragraph 14 hereof or abandonment of the Property, the right to collect and retain such rents as they become due and payable.

16. **Future Loan Advances.** Upon Your request, We at Our option may make Future Loan Advances to You or Borrower. Such Future Loan Advances, with interest thereon, shall be secured by this Deed of Trust when evidenced by a promissory note or agreement stating that said note or agreement is so secured.

17. **Release.** Upon payment of all sums secured by this Deed of Trust and any applicable Early Closure Release Fee or other fees due Us and upon (a) expiration of the Agreement or (b) Your request, We shall release this Deed of Trust and You shall pay all costs of recordation along with any reconveyance fee and any statement of obligation fee, if any.

**EXHIBIT A**

**citibank®**

### Deed of Trust, continued

18. **Appointment of Receiver; Lender in Possession.** Upon acceleration under this Deed of Trust or abandonment of the Property, We shall be entitled to have a receiver appointed by a court to enter upon, take possession of, and manage the Property and collect the rents of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including but not limited to, receiver's fees and premiums on the receiver's bonds and reasonable attorneys fees and then to the sums secured by this Deed of Trust. The receiver shall be liable to account only for those rents actually received.

19. **Statement of Obligation.** We may collect a fee for furnishing a statement of obligation in an amount not to exceed the maximum amount permitted under applicable law.

20. **No Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for Our benefit in any capacity, without Our prior written consent.

21. **Fixture Filing.** This Deed of Trust constitutes a financing statement filed as a fixture filing in the Official Records of the County Recorder of the county in which the Property is located with respect to any and all fixtures included within the term "Property" as used in this Deed of Trust and with respect to any goods or other personal property that may now or hereafter become such fixtures.

22. **Third Party Waivers.** In the event that any of You has not also signed the Agreement as Borrower, each of You: (a) agrees that We may, from time to time, without notice to, consent from or demand on You, and without affecting or impairing in any way any of Our rights or Your obligations, (i) renew, extend, accelerate, compromise or change the interest rate or other terms of the Agreement and any promissory note or agreement evidencing a Future Loan Advance, and (ii) accept, waive and release other security (including guarantees) for the obligations arising under the Agreement or any promissory note or agreement evidencing a Future Loan Advance, and (b) waives (i) any right to require Us to proceed against any Borrower or any other person, proceed against or exhaust any security for the obligations secured by this Deed of Trust or pursue any other remedy in Our power whatsoever, (ii) any defense or right against Us arising out of any disability or other defense or cessation of liability of any Borrower for any reason other than full payment, (iii) any defense or right against Us arising out of Our foreclosure upon the Property, even though such foreclosure results in the loss of any right of subrogation, reimbursement or other right You have against any Borrower, (iv) all presentments, diligence, protests, demands and notice of protest, dishonor, and nonperformance, (v) until payment in full of the indebtedness secured by this Deed of Trust, any right of subrogation or the benefit of any security for such indebtedness, and (vi) the benefit of the statute of limitations affecting the Property to the extent permitted by law. Any partial payment by Borrower or other circumstance that operates to toll any statute of limitations as to such person shall operate to toll such statute as to You.

23. **Choice of Law.** The Deed of Trust will be governed by United States federal law and, to the extent the United States federal law is inapplicable, then by the laws of the Commonwealth of Virginia; except that, with regard to the perfection and enforcement of Citibank's security interest in the Property, the Deed of Trust will be governed by the law of the state where the Property is located.

24. **Your Copy.** You shall be given one conformed copy of the Agreement and this Deed of Trust.

EXHIBIT A

**Deed of Trust, continued**

**citibank**®

25. **Loan Charges Legislation Affecting Our Rights.** If the Agreement is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Agreement exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any such loan charge already collected from You or Borrower which exceeded permitted limits will be refunded to You or Borrower; We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to You or Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge due. If enactment or expiration of applicable laws has the effect of rendering any provision of the Agreement or this Deed of Trust unenforceable according to its terms, We may at Our option, require immediate payment in full of all sums secured by this Deed of Trust and may invoke any remedies permitted by Paragraph 14.

26. **Waiver of Homestead.** You waive all right of homestead exemption in the Property.

27. **Trustee Exculpation.** If this Deed of Trust is executed by a trust, You execute this Deed of Trust as trustee as aforesaid, in the exercise of the power and authority conferred upon and vested in it as such trustee, and it is expressly understood and agreed by Us and by every person or hereafter claiming any right hereunder that nothing contained herein or in the Agreement shall be construed as creating any liability on You personally to pay amounts owing in connection with the Agreement or this Deed of Trust or any interest that may occur thereon, or to perform any covenants either express or implied contained in this Deed of Trust, all such liability, if any, being expressly waived, and that any recovery on the Deed of Trust or the Agreement shall be solely against and out of the Property by enforcement of the provisions of this Deed of Trust and the Agreement, but this waiver shall in no way affect the personal liability of any individual Borrower, co-maker or guarantor of this Agreement.

28. **Substitute Trustee.** We may, at Our option, from time to time, remove the Trustee and appoint a successor Trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor Trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

29. **Reconveyance.** After compliance with all requirements of the Agreement and payment of all fees due to Us, We shall request the Trustee to reconvey the Property to You. Trustee shall reconvey the Property without Warranty. You shall pay any fee legally charged by the Trustee for the issuance of reconveyance and all costs of recordation.

30. **Lease of the Property.** Trustee hereby leases the Property to borrower until this Deed of Trust is either satisfied and released or until there is a default under the provisions of this Deed of Trust. The Property is leased upon the following terms and conditions: Borrower, and every person claiming a interest in or possessing the Property or any part thereof, shall pay rent during the term of lease in the amount of one cent per month, payable on demand, and without notice or demand shall and will surrender peaceable possession of the Property to Trustee upon default or to the purchaser of the Property at the foreclosure sale.

EXHIBIT A

**citibank®**

**Deed of Trust, continued**

### REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
### UNDER SUPERIOR DEED OF TRUST OR MORTGAGE

We and You request the holder of any encumbrance with a lien which has priority over this Deed of Trust give notice to Us, at Our address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action with respect to the Property whose legal description is annexed hereto.

### REQUEST FOR RECONVEYANCE

TO TRUSTEE:

The undersigned is the holder of the Agreement secured by this Deed of Trust. The Agreement together with all other indebtedness and obligations secured by this Deed of Trust have been paid and performed in full. Trustee is hereby directed to cancel the Agreement and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all estate now held by Trustee to the persons legally entitled thereto.

Date: _____          _____

CFX-H-SI-703-MO
DAVIS

8 of 8

Revised 09/27/2006
ACAPS: █████████

EXHIBIT A

# Exhibit A

SITUATED IN THE COUNTY OF ST. LOUIS AND STATE OF MISSOURI, TO-WIT: PART OF LOT 3 OF THE SUBDIVISION OF THE HOMESTEAD TRACT IN THE JAMES WILGUS ESTATE PARTITION IN SECTION 21 TOWNSHIP 45 NORTH, RANGE 6 EAST, IN ST. LOUIS COUNTY, MISSOURI AND DESCRIBED AS: BEGINNING AT A POINT IN THE SOUTH LINE OF WHITE AVENUE, 40 FEET WIDE, AS DEDICATED BY INSTRUMENT RECORDED IN BOOK 1276 PAGE 183, AT THE NORTHEAST CORNER OF TRACT ACQUIRED BY EDWARD HERRMANN AND WIFE, BY DEED RECORDED IN BOOK 1426 PAGE 201, THENCE ON THE EAST LINE OF SAID TRACT ACQUIRED BY HERRMANN, SOUTH 1 DEGREE 16 MINUTES WEST 127 FEET TO A POINT, THENCE EAST AND PARALLEL WITH THE SOUTH LINE OF WHITE AVENUE 48 FEET TO A POINT, THENCE NORTH 1 DEGREE 16 MINUTES EAST 127 FEET TO A POINT IN THE SOUTH LINE OF WHITE AVENUE, AND THENCE WEST ON SAID SOUTH LINE OF WHITE AVENUE 48 FEET TO THE POINT OF BEGINNING.

EXHIBIT A

## Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower" as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when [X] the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or [ ] the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

_____    _____
Borrower                            Co-Borrower

### I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | [ ] VA  [X] Conventional  [ ] Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|
| | [ ] FHA  [ ] USDA/Rural Housing Service | | |

| Amount | Interest Rate | No. of Months | Amortization Type: | [X] Fixed Rate  [ ] Other (explain): |
|---|---|---|---|---|
| $ 390,500.00 | 4.75 % | 360 | | [ ] GPM  [ ] ARM (type): |

### II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & ZIP) | No. of Units |
|---|---|
| 9112 WHITE AVE, SAINT LOUIS, MO 63144 | 1 |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| | 1999 |

| Purpose of Loan | [ ] Purchase  [ ] Construction  [ ] Other (explain): | Property will be: |
|---|---|---|
| | [X] Refinance  [ ] Construction-Permanent | [X] Primary Residence  [ ] Secondary Residence  [ ] Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements | [ ] made  [ ] to be made |
|---|---|---|---|---|---|
| 2000 | $ 331,000.00 | $ 667,588.00 | No Cash Out Other | Cost: $ | |

| Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in |
|---|---|---|
| James and Cynthia Davis | Husband and Wife | [X] Fee Simple  [ ] Leasehold (show expiration date) |

| Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain) |
|---|
| |

### III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | JAMES DAVIS | Co-Borrower's Name (include Jr. or Sr. if applicable) — Cynthia Davis |

| Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|
| ___2031 | (314)368-7782 | | 18 | ___4613 | (314)962-1110 | | 18 |

| [X] Married  [ ] Unmarried (include single, divorced, widowed)  [ ] Separated | Dependents (not listed by Co-Borrower) no. 0 ages | [X] Married  [ ] Unmarried (include single, divorced, widowed)  [ ] Separated | Dependents (not listed by Borrower) no. 0 ages |
|---|---|---|---|
| | | | |

| Present Address (street, city, state, ZIP) [X] Own [ ] Rent 5Y No. Yrs. | Present Address (street, city, state, ZIP) [X] Own [ ] Rent 5Y No. Yrs. |
|---|---|
| 9112 WHITE AVE, SAINT LOUIS, MO 63144 | 9112 WHITE AVE, SAINT LOUIS, MO 63144 |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|
| 9112 WHITE AVE, SAINT LOUIS, MO 63144 | 9112 WHITE AVE, SAINT LOUIS, MO 63144 |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) [ ] Own [ ] Rent ___ No. Yrs. | Former Address (street, city, state, ZIP) [ ] Own [ ] Rent ___ No. Yrs. |
|---|---|
| | |

### IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|

| Name & Address of Employer [X] Self Employed | Yrs. on this job | Name & Address of Employer [ ] Self Employed | Yrs. on this job |
|---|---|---|---|
| Davis and Garvin | 26Yrs. | Frontier Airlines | 4Yrs. |
| 325 North Kirkwood Road, SAINT LOUIS, MO 63122 | Yrs. employed in this line of work/profession 0.00 | 1 Lambert International Airport, SAINT LOUIS, MO 63144 | Yrs. employed in this line of work/profession 0.00 |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|
| Owner | (636)394-3300 | Gate Agent | (314)368-5323 |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer [ ] Self Employed | Dates (from - to) | Name & Address of Employer [ ] Self Employed | Dates (from - to) |
|---|---|---|---|
| | | | |
| | Monthly Income $ | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|
| | | | |

| Name & Address of Employer [ ] Self Employed | Dates (from - to) | Name & Address of Employer [ ] Self Employed | Dates (from - to) |
|---|---|---|---|
| | | | |
| | Monthly Income $ | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|
| | | | |

Uniform Residential Loan Application
Fannie Mae/Freddie Mac
VMP ®
Wolters Kluwer Financial Services

Freddie Mac Form 65   7/05 (rev. 6/09)
Fannie Mae Form 1003   7/05 (rev. 6/09)
Initials: ___   Initials: ___   Page 1 of 4

EXHIBIT 3

*HLD

EXHIBIT A

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | ...ent | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ ___.00 | $ ___.00 | $ ___.00 | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | 2,400.00 | $ 2,037.04 |
| Bonuses | | | | Other Financing (P&I) | 0.00 | 391.00 |
| Commissions | | | | Hazard Insurance | .0.00 | 83.33 |
| Dividends/Interest | | | | Real Estate Taxes | 0.00 | 450.00 |
| Net Rental Income | 0.00 | 0.00 | 0.00 | Mortgage Insurance | 0.00 | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | 0.00 | |
| | | | | Other: | 0.00 | |
| Total | $ ___.00 | $ ___.00 | $ ___.00 | Total | $ 2,400.00 | $ 2,961.37 |

\* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income    Notice:  Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B)
or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.    Completed [x] Jointly [ ] Not Jointly

| ASSETS Description | Cash or Market Value | | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
| List checking and savings accounts below | | | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | FINANCIAL ASSISTANCE | 1.00 | 277.00 |
| Commerce Bank 123 main St SAINT LOUIS, MO 63144 | | | | 0 | |
| Acct. no. 111 | $ 1.00 | | Acct. no. ___ Name and address of Company | | |
| Name and address of Bank, S&L, or Credit Union | | | CITIBANKNA | $ Payment/Months 391.00 | $ 99,543.00 |
| Commerce Bank 123 main St SAINT LOUIS, MO 63144 | | | | 254 | |
| Acct. no. 111 | $ 5,000.00 | | Acct. no. ___ Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | SHELL/CITI | 14.00 | 396.00 |
| | | | | 28 | |
| Acct. no. | $ | | Acct. no. ___ Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | DISCOVER FIN SVCS LLC | 92.00 | 4,572.00 |
| | | | | 49 | |
| Acct. no. | $ | | Acct. no. ___ Name and address of Company | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number & description) | $ | | CHASE | 142.00 | 4,486.00 |
| | | | | 31 | |
| | | | Acct. no. ___ Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value | $ | | GEHB/GE MONEY BANK LOW | 55.00 | 1,643.00 |
| Face amount: $ | | | | 29 | |
| Subtotal Liquid Assets | $ 5,001.00 | | Acct. no. ___ | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ ___.00 | | Name and address of Company | $ Payment/Months | $ |
| Vested interest in retirement fund | $ | | | 4,538.00 | 678,843.00 |
| Net worth of business(es) owned (attach financial statement) | $ | | See Continuation Sheet | | |
| Automobiles owned (make and year) | $ | | Acct. no. ___ | | |
| | | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | | Total Monthly Payments | $ 2,833.00 | |
| Total Assets a. | $ ___.00 | | Net Worth (a minus b) ► $ ___ | Total Liabilities b. | $ ___ |

Uniform Residential Loan Application
Fannie Mae/Freddie Mac
VMP ®
Wolters Kluwer Financial Services

Freddie Mac Form 65 7/05 (rev. 6/09)
Fannie Mae Form 1003 7/05 (rev. 6/09)
Initials: ___    Initials: ___    Page 2 of 3



*HLD

EXHIBIT A

**VI. ASSETS AND LIABILITIES (cont'd)**

Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 6822 Dale, SAINT LOUIS, MO 63139 | R   SFR | $ | $ 100,180.00 | $ | $ 370.00 | $ | $ |
| 9112 WHITE AVE, SAINT LOUIS, MO 63144 | SFR | | 387,195.00 | | 2,400.00 | | |
| 6824 Dale, SAINT LOUIS, MO 63139 | R   SFR | | 80,670.00 | | 298.00 | | |
| | Totals | $ | $ 568,045.00 | $ | $ 3,068.00 | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | |
| e. Estimated prepaid items | |
| f. Estimated closing costs | |
| g. PMI, MIP, Funding Fee | 0.00 |
| h. Discount (if Borrower will pay) | 0.00 |
| i. Total costs (add items a through h) | |
| j. Subordinate financing | 0.00 |
| k. Borrower's closing costs paid by Seller | 0.00 |
| l. Other Credits (explain) | |
| | |
| | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | |
| n. PMI, MIP, Funding Fee financed | 0.00 |
| o. Loan amount (add m & n) | |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | | X | | X |
| b. Have you been declared bankrupt within the past 7 years? | | X | | X |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | X |
| d. Are you a party to a lawsuit? | | X | | X |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name, and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | X | | X |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | X |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | X |
| h. Is any part of the down payment borrowed? | | X | | X |
| i. Are you a co-maker or endorser on a note? | | X | | X |
| j. Are you a U.S. citizen? | X | | X | |
| k. Are you a permanent resident alien? | | X | | X |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | X | |
| m. Have you had an ownership interest in a property in the last three years? | X | | X | |
| (1) What type of property did you own — principal residence (PR), second home (SH), or investment property (IP)? | PR | | PR | |
| (2) How did you hold title to the home — solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | SP | | SP | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq., (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | 9/16/11 |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | [X] I do not wish to furnish this information. | | CO-BORROWER | [X] I do not wish to furnish this information. | |
|---|---|---|---|---|---|
| Ethnicity: | Hispanic or Latino | [X] Not Hispanic or Latino | Ethnicity: | Hispanic or Latino | [X] Not Hispanic or Latino |
| Race: | American Indian or Alaska Native   Asian   [ ] Black or African American | | Race: | American Indian or Alaska Native   Asian   [ ] Black or African American | |
| | Native Hawaiian or Other Pacific Islander   [X] White | | | Native Hawaiian or Other Pacific Islander   [X] White | |
| Sex: | [X] Female   [X] Male | | Sex: | [X] Female   Male | |

To Be Completed by Loan Originator

| This information was provided: | In a face-to-face interview | By the applicant and submitted by fax or mail |
|---|---|---|
| | [X] In a telephone interview | By the applicant and submitted via e-mail or the Internet |

| Loan Originator's Signature | Date |
|---|---|
| X | 09/09/2011 |

| Loan Originator's Name (print or type) | Loan Originator Identifier | Loan Originator's Phone Number (including area code) |
|---|---|---|
| JOSH RAPAPORT | 598623 | (877) 483-3528 |

| Loan Origination Company's Name | Loan Origination Company Identifier | Loan Origination Company's Address |
|---|---|---|
| JPMorgan Chase Bank, N.A. | 399798 | 1111 Polaris Parkway, Floor 4J |
| | | Columbus, OH 43240 |

Uniform Residential Loan Application
Fannie Mae/Freddie Mac
VMP ®
Wolters Kluwer Financial Services

Freddie Mac Form 65   / 05 (Rev. 6.09)
Fannie Mae Form 1003   / 05 (Rev. 6.09)

Initials: ___   Initials: ___   Page 3 of 3

*HLD

EXHIBIT A

**CONTINUATION SHEET/RESIDENTIAL LOAN APPLICATION**

| | | |
|---|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: JAMES DAVIS | Agency Case Number: |
| | Co-Borrower: Cynthia Davis | Lender Case Number: |

## Liabilities

| Name of Company | Address | Acct. No. | Monthly Payment | Months Left to Pay | Unpaid Balance | Sat. |
|---|---|---|---|---|---|---|
| TOYOTA MOTOR CREDIT | | | 429.00 | 52 | 22,644.00 | |
| BANK OF AMERICA, N.A. | | | 298.00 | 270 | 80,670.00 | |
| BANK OF AMERICA, N.A. | | | 370.00 | 270 | 100,180.00 | |
| THD/CBNA | | | 115.00 | 27 | 3,198.00 | |
| AES/RBS CITIZENS NA | | | 216.00 | 134 | 29,040.00 | |
| CHASE | | | 111.00 | 27 | 3,027.00 | |
| GEMB/CARE CREDIT | | | 235.00 | 26 | 6,245.00 | |
| CHASE | | | (2,400.00) | 161 | 387,195.00 | * |
| US DEPT OF EDUCATION | | | 364.00 | 128 | 46,644.00 | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X | | X | |

Uniform Residential Loan Application
Fannie Mae/Freddie Mac
VMP®
Wolters Kluwer Financial Services

Form 65 7/05
Form 1003 7/05
Page 4 of 4

Initials: _____   Initials: _____

*HLD

**EXHIBIT A**

**MORTGAGE CONDITIONAL APPROVAL**  **CHASE**

JPMorgan Chase Bank, N.A.
1820 E Sky Harbor Circle S Flr 2
Phoenix, AZ 85034-9701

JAMES DAVIS                          Loan Number: ▮▮▮▮▮▮
9112 WHITE AVE                       Property Address: 9112 WHITE AVE
SAINT LOUIS, MO 63144                                   SAINT LOUIS, MO 63144
                                     Date:          September 9, 2011

**GOOD NEWS! YOU HAVE RECEIVED A CHASE MORTGAGE CONDITIONAL APPROVAL.**
**We're ready to make your refinancing experience as fast and easy as possible.**

Dear JAMES DAVIS:

Thank you for talking with me about refinancing your mortgage with Chase. I am pleased to be able to send you this Conditional Approval Letter. Now we can work together to begin processing your application and complete your refinancing.

You are now conditionally approved for a mortgage loan based on the terms below. We will complete your mortgage application as soon as you meet all the loan conditions on the following page(s).

| LOAN INFORMATION | |
|---|---|
| Loan Amount | $390,500.00 |
| Product Type | FHLMC 30 YR Fixed LTV>105% |
| Term in Years | 30 |
| Estimated Interest Rate | 4.750% |
| Rate Locked? | Yes |
| Estimated Discount Points | 0.000% |
| Estimated Monthly Payment (only includes Principal and Interest) | $2,037.04 |
| Escrowing Taxes and Insurance? | Yes |
| Occupancy Type | Primary Residence |
| Mortgage Insurance Required? | Yes |
| **CONDITIONAL APPROVAL EXPIRATION DATE:** | **October 9, 2011** |

Note: Any changes may affect the interest rate and discount points or other terms of this Conditional Approval.

This Conditional Approval Letter is based on the information you provided in your application, is not a commitment and may be subject to revision or revocation if there are changes to our credit policy or loan programs. Please refer to your Lock-In Agreement, if applicable, for specific terms if you have elected to lock your rate. If you do not return requested documentation quickly or there is a change in your financial or credit condition or in any other information provided to us, Chase reserves the right to cancel this Conditional Approval. This Conditional Approval is subject to compliance with all applicable federal, state and local laws, rules and regulations and the execution of all documentation required by Chase. With your best interests in mind, Chase will not make high-cost loans; therefore, this Conditional Approval is subject to Chase's determination that the loan is not a high-cost loan.

Thank you for choosing Chase for your mortgage financing needs. Please provide the information requested on the following page(s) within 3 days It is important that you contact me so I can make sure all of your necessary documentation is received and you have a timely and smooth closing.

Sincerely,

Josh Rapaport
Mortgage Consultant
(877)483-3528 (866)750-5458
JOSH.X.RAPAPORT@CHASE.COM

Mortgage Loan Originator Registry Number: 598623

Conditional Approval for Refinance

Page 1 of 2





EXHIBIT A

## MORTGAGE CONDITIONAL APPROVAL: CONDITIONS

 CHASE

September 9, 2011

Loan Number:

JAMES DAVIS, Cynthia Davis

**TO MOVE TO THE NEXT STEP IN THE MORTGAGE APPROVAL PROCESS, WE NEED ADDITIONAL INFORMATION FROM YOU.**

You have been conditionally approved. We've listed the conditions that need to be satisfied so that we can complete your application. You'll see what you need to take care of, what we'll do after we receive your information, and what other companies (such as title or appraisal companies) will provide.

**You will need to gather and return the following:**

We must receive all the necessary information before we can complete your application. (We've also enclosed a *Follow-up Checklist* for you to use that shows the same conditions you are responsible for meeting.)

    i   All borrower(s) must complete, sign and date an IRS form 4506-T at time of closing.

    ☐   All borrower(s) must complete, sign and date an IRS form 4506-T at time of application.

    ☐   Evidence of adequate homeowners insurance coverage is required prior to closing.

**We will obtain and review the following:**

• Provide documentation showing secondary financing has been subordinated.

• Cash back to the borrower cannot exceed $250. Any excess funds must be used to reduce the loan balance.

• Financed closing costs cannot exceed actual closing costs/prepaids/discount points, 4% of current unpaid principal balance or $5000, whichever is less.

• This loan must close on or before the Overall Document Expiration Date.

• The following electronic value was used in the loan evaluation. The Note must be dated within 120 days of the date shown: 331344 Jul 5 2011.

• Chase to obtain additional property value documentation if loan is not closed using the electronic value of $331,344.

**We will request information from other companies:**

• At closing, provide the borrower(s) with a finalized copy of the FNMA 1003 application form.

• Title Commitment to be issued with no liens, judgments, or delinquent taxes against the property or Borrower(s).

• No funds are to disburse until Chase has reviewed and approved the HUD-1 Settlement Statement prepared by the Settlement Agent.

**IMPORTANT! Your Conditional Approval will expire on October 9, 2011. So please return your information within 3 days.**

Note: Approval is subject to receipt and verification of all documents provided to the satisfaction of Chase.

Conditional Approval for Refinance

Page 2 of 2



EXHIBIT A



1000 TECHNOLOGY DRIVE, MS 639
O'FALLON, MO 63368


October 13, 2011


CYNTHIA K DAVIS
9112 WHITE AVENUE
SAINT LOUIS MO 63144


Account number: ████████

Dear CYNTHIA K DAVIS:


We have received your request for the subordination of your Home Equity account.

Please note that Citi charges a $200.00 subordination fee. This fee will be assessed
to your account and will appear as a fee on your monthly account statement. If a check
for this fee has already been submitted with the subordination request, it will be
applied to your account to offset the charge.

If you have any questions, please call us at 866-795-4978*.


Sincerely,

Citibank, N.A.                          Reference #111100306263000 (FE10)

*Calls are randomly monitored and recorded for quality assurance.


**EXHIBIT**

**5**

*See reverse side for important information.*
⁺*To ensure quality service, incoming calls are randomly monitored. For TTY service, call (800) 945-0258.*
*Checking Plus⁺, Ready Credit⁺ and Equity Source Account⁺ (ESA) are registered service marks of Citicorp.*
Item SU205 (Rev. 07/11)

EXHIBIT A