UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CYNTHIA K. DAVIS,   )
                    )
                    )
    Plaintiff,      )
                    )  Case Number: 4:14-cv-01129-CDP
v.                  )
                    )
CITIBANK, N.A.,     )
                    )
                    )
    Defendant.      )

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT CITIBANK'S MOTION TO DISMISS**

I.   **Introduction**

Defendant CitiBank, N.A. ("Bank") seeks dismissal with prejudice of the Petition that Plaintiff Cynthia K. Davis filed in state court based on the Bank's assertion that none of the claims set forth therein state a claim upon which relief may be granted. The Bank's motion to dismiss ("Motion") is, however, unavailing because it is fatally plagued by legal and factual mischaracterizations with respect to Ms. Davis' Missouri Merchandising Practices Act ("MMPA") and Missouri Second Mortgage Loan Act ("MSMLA") claims, and she will be imminently rectifying via a motion to amend her Complaint a couple of oversights as to the pleading of her fraud claim.

II.  **Standard of Review**

Under federal pleading standards, Complaints are not required to contain detailed factual averments. C.N. v. Willmar Public School, 591 F.3d 624, 629 (8th Cir. 2010). A Plaintiff is, however, required to file a pleading that describes sufficient facts to indicate she has "a claim to relief that is plausible on its face". Ashcroft v. Iqbal, 129 S. Ct. 1937, 1947, 173 L. Ed. 2d 868

(2009). The facts should suggest the Plaintiff is not just on some sort of "fishing expedition". Braden v. Wal-Mart Stores, 588 F. 3d 585, 598 (8th Cir. 2009). In conducting its review of the sufficiency of the claims, the court should consider the "complaint as a whole, not parse [it] piece by piece to determine whether each allegation [is], in isolation, plausible. Id., p. 594. Moreover, this Court should draw all reasonable inferences in favor of Ms. Davis in ruling on Citibank's Motion. Id., p. 595. Ultimately, the reviewing court "should draw on its judicial experience and common sense". Iqbal, supra, 129 S. Ct. at 1950.[1]

### III.   Ms. Davis' Unjust Enrichment Claim Suffices Under Missouri Law, Which Is Controlling, And Would Suffice Under Nevada Law As Well

The Bank's statement that "The HELOC agreement is governed by Nevada law" is incorrect. First, the HELOC Agreement specifically provides that interpretation of the contract is "governed by the law of the state where the Property is located" insofar as enforcement of the [Bank's] security interest in the Property is concerned." Petition,[2] Exhibit 2, p. 8, ¶ 19. The Bank concedes, for purposes of this Court's disposition of its Motion, that the subject property is located in Missouri. Citibank's Memorandum In Support of Motion, p. 3.

Given that the Property is located in Missouri, Davis is a resident of Missouri and that the transaction occurred in Missouri, it is manifest that the laws of the State of Missouri govern this case. Plainly, the Bank is arguing in its Motion that Ms. Davis breached a term of the HELOC deed of trust and it is now seeking to "enforce" its interpretation of the document that gives it a security interest in the pertinent property.

---

[1] F.R. Civ. P. 84 provides that sample complaints in the Appendix of Forms serve to illustrate the simplicity and brevity that is appropriate for compliance with federal pleading standards. R & L Carriers v. DriverTech, 681 F. 3d 1323, 1334 (Fed. Cir. 2012). Plaintiffs submits that a comparison of those forms with her pleading demonstrates that her Complaint surpasses federal pleading standards.

[2] The Petition that Ms. Davis filed in Missouri State Court was filed in this Court by Citibank in connection its June 20, 2014 removal of this case to this Court.

Secondly, even if Nevada law were applied, Plaintiff's claims are not based on a contract. Citibank's claim that Ms. Davis has failed to state a claim for unjust enrichment because her claims are based on a contract is a complete invention by Citibank and reflects an attempt recast Ms. Davis' claim to better enable Citibank to defend it. Ms. Davis' claims are based on the Bank's lack of authority to impose the subordination fee; it is precisely the lack of an agreement and authorization for the fee that is the essence of her claims.

Ms. Davis refers to the HELOC Agreement solely as evidence (Petition, ¶¶ 25-26) that an agreement to pay the subordination fee does not exist, which does not convert her unjust enrichment claim into one that could sound in breach of contract. As she has clearly stated in her pleading, the Bank has been unjustly enriched at her expense. Thus, the Bank's argument distorts Ms. Davis' unjust enrichment claim and, in the process, raises a defense that has no applicability to what she has pled.

IV.  **Ms. Davis' Missouri Merchandising Practices Act Claim Is Cognizable In That It Complains Of A Deceitful Charge That It Unauthorized By The HELOC Agreement And It Relates To A Useless Supposed Service That Was Completely Unnecessary Given That The Applicable Uniform Commercial Code Provision Would Have Caused Subordination To Occur As A Matter Of Law**

The Bank contends that the HELOC Agreement "did in fact 'contain [a] provision regarding the charge for a subordination fee, citing language in the HELOC Deed of Trust which required that Ms. Davis "not enter into any agreement with the holder of a Prior Deed of Trust whereby such Prior Deed of Trust, or the indebtedness secured thereby is modified, amended, extended or renewed, without [Bank's] prior written consent". Petition, Exhibit 2, Deed of Trust at p. 3, ¶ 3.[3] As support for what is clearly an overreaching term, Bank cites State St. Bank &

---

[3] Citibank repeatedly interprets its own HELOC documents in a strained manner. Notably, because it drafted these documents, any uncertainty as to the meaning of their contents should be resolved in favor of Ms. Davis. Triarch Industries v. Crabtree, 158 S.W. 3d 772, 776 (Mo. banc 2005); Suburban Business Products v. Granite City, 2012 U.S. Dist. LEXIS 182895 (E.D. Mo. Dec. 31, 2012).

Trust Co. v. Inversiones Errazuriz Limitada, 374 F. 3d 158, 170 (2d Cir. 2004), which states that a "bank is not prohibited from unreasonably or arbitrarily withholding . . . consent", in instances such as the one at issue here.

Bank's rationale is flawed for several reasons: (1) the Bank actually provided its consent to the subordination as evidenced by its letter dated October 13, 2011, Petition, Exhibit 5, prior to the closing of the refinance.  Therefore, the Bank provided its consent, so there is no possible claim that there is or was a breach of this term of the HELOC Deed of Trust; (2) Ms. Davis did not enter into an agreement in violation of the provision that Citibank cites; rather, at the time that Citibank provided its written consent, Chase had only given conditional approval to Ms. Davis' refinancing request; and (3) the issue is not of whether the Bank has the right to reject a request for a subordination; *it is the right which Bank assumes to condition its consent on the payment of a fee, when the Plaintiff is clearly vulnerable to predatory motives, and there is a threshold question of whether the Bank provided any service at all.*

The Bank also cites, as authority for its right to charge a fee for the subordination of its mortgage interest, the HELOC Agreement at ¶ 5(i): "Fees to Release Prior Lien. You **may** have to pay a fee to release a prior lien or security interest in the Property." Ex. 2.  First, may is not equivalent to will.  Secondly, the language suggests a payment to a third party, such as a recording fee to a County Recorder.  Also, Bank did not release anything; Chase released its Deed of Trust.

Bank would also prefer that ¶ 5 be read in isolation, as opposed to in the context of the entire HELOC Agreement and the point in time that it was executed.  Paragraph 3 of the HELOC Agreement is titled, "How Finance Charges are imposed and Determined; paragraph 4 is titled "Finance Charges Not Due to Daily Periodic Rate; Closing Costs"; paragraph 5 is titled "Other

4

Charges". These paragraphs are grouped together for a reason: because they cover the same topic - what is, and what is not, included in the calculation of principal and interest, and thus, how monthly payment obligations are calculated. Further, the HELOC Agreement is entered into at the closing, when it may be necessary to release one or more liens against the property that serves as collateral to provide the security which the Bank requires. Taken in this context, the language in ¶ 5(i) applies to this circumstance versus the one which Bank is advocating. At best, the language in paragraph 5(i) is ambiguous, at worst, deceptive. In either case, it fails to place a borrower on notice that the Bank would use it as a pretext for charging $200.00 for producing a form on a single sheet of paper.

The Bank also claims that Ms. Davis MMPA claim fails because she has not sufficiently alleged an unfair trade practice or concealment of a material fact. Memorandum In Support, p. 7. As set forth above, Bank has failed to produce any support for its argument that the subordination fee was authorized by the HELOC Agreement. This failure to disclose constitutes concealment of a material fact, as alleged in the petition. Interestingly, in Bank's efforts to find language which could somehow be interpreted as authorizing the fee, the actual term "subordination fee" is not used once in either the HELOC Agreement or its companion Deed of Trust. Instead, Bank relies on language in its HELOC Agreement that is ambiguous or subject to multiple meanings, when it could have easily avoided this confusion by incorporating a plain language term into its HELOC Agreement specifying the amount of a subordination charge and the circumstances under which it would be incurred.

The Bank also argues, inexplicably, that Ms. Davis' MMPA claim is "unavailing, if not frivolous" based on its contention that Article 9 of the UCC is wholly inapplicable to transactions relating to security interests in real property of the type cited by Ms. Davis.

5

Memorandum In Support, p. 8. The Bank relies on § 400.9-109, RSMo, as support for this proposition.

However, the Bank conspicuously omits to mention that § 400.9-109(11)(A), RSMo provides that Article 9 applies to liens on realty as provided for in §§ 400.9-203 and 400.9-308, RSMo. § 400.9-203 codifies and continues the concept of the purchase money security interest, and its priority over other liens. Even prior to the adoption of the UCC, the priority of purchase money mortgages was well established. The priority of the purchase money mortgage, relative to other liens, was recognized in Golden Delta Enterprises, L.L.C. v. US Bank, 213 S.W.3d 171 (Mo. App. E.D. 2007), which states: "The Restatement of Property concisely states the rule of law applied in Missouri case law: 'If a senior mortgage is released of record and, as part of the same transaction, is replaced with a new mortgage, the latter mortgage retains the same priority as its predecessor, except...to the extent that any change in the terms of the mortgage or the obligation it secures is materially prejudicial to the holder of a junior interest in the real estate.'" 213 S.W. 3d at 176 (quoting *Restatement (Third) of Property: Mortgages Section 7.3* (1997)).

Applying this principle here there was no loss of priority upon the refinance of the existing Chase Deed of Trust inasmuch as the amount of the new Chase mortgage remained the same as the old Chase mortgage, thus leaving the parties, including Citibank, in the same position they occupied prior to the refinancing. Given that there was no loss of priority upon refinancing, which was fully understood by the Bank, it appears that the Bank charged a fee for a "service" or act which was entirely perfunctory if not entirely meaningless. If the act of subordination was nothing more than a charade, which was represented to Ms. Davis as a legal necessity, then the Bank's entire justification for the subordination fee was false and misleading. The MMPA clearly provides a remedy for such deceitful conduct.

6

V.  **Ms. Davis' Second Mortgage Loan Act Claim Is Cognizable Because The Bank's Subordination Fee Is Not An "Additional Charge" Authorized By That Act And This Claim Is Not Preempted By The National Bank Act**

Citibank argues that the MSMLA does not prohibit a lender from imposing a charge on a second home loan borrower such as Ms. Davis unless she first establishes that the interest rates or fees imposed are unlawful "independently of the SMLA". Citibank's argument misstates the scope of the MSMLA and of Avila v. Cmty. Bank, 143 S.W.3d 1 (Mo. App. W.D. 2003). It also ignores the legislative change made to § 408.232 subsequent to, and apparently in light of, Avila.

Prior to the Avila case, § 408.232.4 of the MSMLA stated: "Sections 408.231 to 408.241 of the MSLMA shall not apply to any loans in which the rate of interest charged is lawful without regard to the rates permitted in subsection 1 of this section". Under this language, the Avila Court held that a lender may not be subject to a civil action for charging fees other than those permitted under section 408.233 *unless it charged an unlawful rate of interest on the loan*. Avila, 143 S.W.3d at 3-4.

In the very next legislative session following the Avila decision, the Missouri legislature amended § 408.232.4 to read: "Sections 408.231 to 408.241 shall not apply to any loans on which the rate of interest **and fees** charged [is] **are** lawful **under Missouri law** without regard to the rates permitted in subsection 1 of this section **and the fees permitted in section 408.233**" (changes indicated in bold). R.S. Mo. § 408.232.4; 2004 Missouri H.B. No. 959 as truly argued and finally passed, codified as § 408.232.

Under this current statutory language, the Eighth and the Missouri Court of Appeals both have upheld causes of actions based on the charging of fees that the MSMLA does not expressly permit, and regardless of the interest rate. Specifically, these courts have held that the MSMLA

7

limits the fees that lenders may charge and that the list in § 408.233 is an exclusive list of allowable fees.  Washington v. Countrywide, 655 F.3d 869, 872-74 (8th Cir. 2011); Mitchell v. Residential Funding Corp., 334 S.W.3d 477, 497-98 (Mo. App. W.D. 2010).  Certainly, this Court should follow these controlling cases.

The Bank also asserts that the National Bank Act ("NBA") preempts Ms. Davis' SMLA claim, arguing that her pleading makes it clear that she breached the HELOC Agreement by contractually committing to modify Chase's deed of trust without the Bank's consent. Memorandum In Support, p. 12.  First, Ms. Davis' pleading does not suggest she agreed to alter Chase's deed of trust prior to the Bank's imposition of the subordination fee at issue.  Rather, Ms. Davis simply applied with Chase for conditional approval of refinancing, thereby eliciting Chase's conditional approval that, among other things, demanded documentation of subordination of secondary financing.  Petition, ¶¶ 8, 9, 10, 11, 12.  Only after the Bank issued its subordination agreement and collected the disputed fee from Ms. Davis did she actually contract with Chase for the refinancing; this sequence is evidenced by Chase's conditional approval document itself, which clearly indicates that Chase was not making a "commitment" to the refinancing at that juncture.  Petition, Exhibit 4, p. 1.

The Bank, in fact, actually acknowledges that Ms. Davis did not breach her obligation to the Bank to refrain from "enter[ing] an[] agreement … without [the Bank's] prior written consent"; it concedes that she had received only a "conditional approval" from Chase to her application for refinancing as of the time the Bank agreed to subordinate.  Memorandum In Support, p. 12.  Thus, because the Bank's sole argument for NBA preemption is predicated on Ms. Davis' breach of a condition upon which the Bank extended her credit and the record

8

actually reflects an agreement of the parties that Ms. Davis breached no obligation to the Bank, the Bank's preemption argument collapses.

## VI.  Conclusion

For the foregoing reasons, this Court should deny the Bank's Motion.

**BICK & KISTNER, P.C.**

By: /s/ Elkin L. Kistner
  Elkin L. Kistner                              #35287MO
  101 South Hanley Road, Suite 1280
  St. Louis, Missouri 63105
  Telephone:  (314) 571-6823
  Facsimile:  (314) 727-9071
  E-mail: elkinkis@bick-kistner.com
  *Co-Counsel for Plaintiff Cynthia K. Davis*

**LAW OFFICES OF DAVIS & GARVIN**

  James W. Davis                              #36921MO
  325 N. Kirkwood Road, Suite 210
  St. Louis, Missouri 63122
  Telephone:  (314) 822-8100 Ext. 22
  Facsimile:  (314) 965-3369
  E-mail: jdavis@davisgarvinlaw.com
  *Co-Counsel for Plaintiff Cynthia K. Davis*

**ROBERTS, WOOTEN & ZIMMER, L.L.C.**

  Kevin C. Roberts                            #31578MO
  P.O. Box 888
  Hillsboro, Missouri 63050
  Telephone:  (636) 797-2693
  E-mail: kevinroberts@rwzlaw.com
  *Co-Counsel for Plaintiff Cynthia K. Davis*

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that on this 10th day of July, 2014 a copy of the foregoing document was served by this Court's CM/ECF electronic filing system upon the following:

Louis F. Bonacorsi
lfbonacorsi@bryancave.com
Jason A. Kempf
jason.kempf@bryancave.com
William O. Scharf
william.scharf@bryancave.com
Bryan Cave LLP
211 N. Broadway, Suite 3600
St. Louis, MO 63102
*Attorneys for Citibank, N.A.*

                                                   /s/ Elkin L. Kistner