IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA K. DAVIS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 4:14-cv-01129-CDP ) |
| CITIBANK, N.A., | ) ) |
| Defendant. | ) ) |

### REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

After conceding that her fraud claim is legally deficient and amenable to dismissal as pled, *see* Docket No. 12 at 1, Plaintiff Cynthia K. Davis ("Plaintiff") fails in her Opposition to put forth a factually or legally supported interpretation of the materials incorporated into the pleadings that would allow her remaining claims to survive a motion to dismiss. In response to Plaintiff's Opposition, Defendant Citibank, N.A. ("Citi") files this Reply in Support of its Motion to Dismiss.

### I.   Unjust Enrichment

Plaintiff first contends that Nevada law does not apply to the interpretation of the HELOC Agreement required by this claim and that Missouri law applies instead. First, as Citi noted in its Memorandum in Support, Nevada law and Missouri law with respect to unjust enrichment are functionally the same. *See* Docket No. 9 at 5 n.2. Plaintiff's point is therefore of little bearing on the resolution of this claim. Second, the HELOC Agreement only provides for the application of local law in place of Nevada law when what is at issue is "the perfection and enforcement of Citibank's security interest in the Property." Ex. 2, Agreement at 8. Plaintiff's unjust enrichment claim in no way involves perfection or enforcement of Citi's security

interest—it involves Plaintiff's incorrect assertion that Citi charged her a fee that was not authorized by the HELOC Agreement. Plaintiff's argument regarding the choice-of-law provision in a contract that she freely entered into is therefore unavailing, and Nevada law controls.

As stated in Citi's Memorandum in Support, under Nevada law, an unjust enrichment claim cannot properly be pressed where, as here, parties' relationship is defined by contract. *See Goodwin v. Exec. Tr. Servs., LLC*, 680 F.Supp.2d 1244, 1255 (D. Nev. 2010). Plaintiff's unjust enrichment claim in essence is that, because of their contractual relationship, Citi was able to charge her a fee that was not provided for by their contract, the HELOC Agreement. This claim sounds in contract, not in equity, and Plaintiff's attempt to plead it in equity should therefore be dismissed as a matter of law.

## II.   MMPA

### A.   Plaintiff's MMPA claim is precluded by the contractual authorization for the complained-of subordination fee.

Plaintiff's MMPA claim is similarly amenable to dismissal at this stage. Citi has contended that one of two provisions, or both, provide the requisite contractual authorization for Citi's charging the complained-of subordination fee. Plaintiff contends that they do not. These two provisions provide: (1) that Plaintiff may "not enter into **any** agreement with the holder of a Prior Deed of Trust whereby such Prior Deed of Trust, or the indebtedness secured thereby is modified, amended, extended or renewed, without Our prior written consent," Ex. 2, Deed of Trust at 3 ¶ 3 (emphasis added), and (2) that Plaintiff "may have to pay a fee to release a prior lien or security interest in the Property," Ex. 2, Agreement at 3 ¶ 5(i).

2

With respect to the first of these provisions, Plaintiff contends alternately that there was no agreement because Plaintiff's refinance agreement with Chase was conditional,[1] or that Citi provided its consent to the refinance, so there was no violation of the contractual term on her part. Both of these arguments fail. The Deed of Trust prohibits the debtor from entering into "any" agreement with a prior note-holder respecting modification of a prior deed of trust. The fact that Plaintiff's refinance agreement was conditional on a number of further actions taken by third parties does not mean that it did not constitute "any agreement" between Plaintiff and Chase by which a deed of trust was to be modified. Moreover, the fact that Citi accepted payment to waive its rights to withhold consent under this provision in no way makes the provision ineffective.

With respect to the second provision at issue, Plaintiff argues that it is ineffective since the provision says "may" and not "will." This is nonsensical. That a grant of authorization is conditional does not make it a nullity. The fact that Citi was not required to charge a subordination fee does not mean that it was not authorized to do so by the Agreement. Second, Plaintiff contends that "the language suggests a payment to a third party, such as a recording fee to a County Recorder," as opposed to a payment to Citi. Docket No. 12 at 4. This interpretation is nowhere found in the text of the Agreement. Further, Plaintiff does not, and cannot, point to any specific part of the text that would indicate such an implied meaning. Plaintiff's interpretations are completely without factual support in the documents and a clear attempt at avoiding the obvious import of a contractual provision providing that fees may be charged "to release a prior lien," in light of the fact that the subordination was charged to allow Plaintiff to have Chase release her prior lien.

---

[1] Plaintiff also makes an irrelevant argument about Citi's purportedly "predatory motives" that has no bearing on the question of whether the subordination fee was authorized by contract.

B.  **UCC Article 9 does not support Davis's MMPA claim.**

Plaintiff next argues that Article 9 of the Uniform Commercial Code is somehow applicable or controlling in this case, despite the default rule contained in § 400.9-109 that the creation or transfer of interests or liens in real property are not subject to Article 9. She bases this assertion on Mo. Rev. Stat. § 400.9-203, an entirely inapposite section of Article 9 that does nothing to explain why the purchase money security interest rules in § 400.9-103 should apply in this case, as Plaintiff pled in her Petition.

Perhaps recognizing the total lack of legal basis in Article 9 for her position, Plaintiff then argues that the Restatement of Property and *Golden Delta Enterprises, L.L.C. v. U.S. Bank*, 213 S.W.3d 171 (Mo. App. 2007) stand for the proposition that her refinance did not affect the priority of her deed of trust with Chase. Docket No. 12 at 6. *Golden Delta* itself, though, states that "where the modification entails an increase in the senior mortgage . . . principal amount, the junior lienor will gain priority over the earlier mortgage to the extent of the modification." *Golden Delta Enters.*, 213 S.W.3d at 176 (quoting *Burney v. McLaughlin*, 63 S.W.3d 223, 232 (Mo. App. 2001). Plaintiff's own loan application shows that, through the refinance, the principal amount of her Chase mortgage increased from $331,000 to $390,500. Ex. 3 at 1. Therefore, even assuming that her cited case law is apposite, which Citi does not concede, Plaintiff's refinance would have altered the priority of her two deeds of trust, and her argument fails on the basis of her own pleadings.

For these reasons and those stated in Citi's Memorandum in Support, the Court should dismiss Plaintiff's MMPA claim.

### III. SMLA

#### A. Plaintiff was required to show that her interest rate exceeded otherwise lawful rates before she could state an improper fee claim under the SMLA.

Plaintiff contends that an amendment to the SMLA after the *Avila* decision, *see Avila v. Cmty. Bank of Va.*, 143 S.W.3d 1 (Mo. App. 2003), had the effect of eliminating the requirement that loans be unlawful for a reason other than the interest and fee schedules in the SMLA before liability could lie for violations of the SMLA. But, both of the decisions she cites in support of her incorrect proposition, *Mitchell v. Residential Funding Corp.* and *Washington v. Countrywide Home Loans*, demonstrate the fallacy of this position.

*Mitchell* is perhaps most instructive, as it provides a comprehensive guide to liability under the SMLA:

> Although Missouri law prohibits lenders from charging interest of more than ten percent or the market rate, under the MSMLA lenders can bypass this restriction for second mortgage loans, provided they otherwise comply with its restrictions. Prior to 1998, the MSMLA permitted lenders to charge up to 20.04% on these second mortgage loans, provided the loans otherwise complied with its restrictions. In 1998, the MSMLA was amended to remove the limit on interest rates, but the fee restrictions remained in place. The MSMLA permits lenders to charge rates agreed to by the parties on these second mortgage loans provided the loans otherwise comply with its restrictions. The Act thus allows lenders to charge interest rates on second mortgages that exceed Missouri's statutorily prescribed usury rate, but the limits on closing costs and fees act as a trade-off. If a second mortgage loan does not comply with the restrictions of the MSMLA, it does not benefit from the MSMLA's provisions permitting it to charge a 20.04% interest rate (prior to 1998) or any rates agreed to by the parties (after 1998).

*Mitchell v. Residential Funding Corp.*, 334 S.W.3d 477, 487 (Mo. App. 2010) (citations, quotation marks, and alterations omitted). Thus, according to *Mitchell*, which Plaintiff concedes is binding authority, and which was issued years after the amendment that Plaintiff purports to rely on, the SMLA is not implicated unless and until a lender charges an interest rate that would be illegal absent the SMLA's exception to normal usury law.

*Washington*, on which Plaintiff also relies, explicitly held that *Mitchell*'s interpretation of the SMLA is binding on federal courts. *See Washington v. Countrywide Home Loans, Inc.*, 655 F.3d 869, 873-74 (8th Cir. 2011). Although Plaintiff characterizes *Washington* as "up[holding] causes of actions [sic] based on the charging of fees that the MSMLA does not expressly permit, and regardless of the interest rate," *Washington* in fact involved an interest rate that would have been illegal under Missouri law except under the SMLA, which is why the SMLA's fee provisions were implicated. *See id.* at 871 (stating that the interest rate charged was 12% per year).

The SMLA states that it "shall not apply to any loans on which the rate of interest and fees charged are lawful under Missouri law *without regard* to the rates permitted in subsection 1 of this section and the fees permitted in section 408.233." Mo. Rev. Stat. § 408.232.4 (emphasis added). The plain meaning of this provision, as was held in the above-mentioned authorities, is that if both a loan's interest rate and fees are lawful under Missouri law *without regard* to the SMLA—if, in other words, the second mortgage at issue does not require the allowances of the SMLA to be legal—then the restrictions on fees within the SMLA are inapplicable to that loan. Plaintiff has nowhere alleged that the interest rate charge by Citi was unlawful, and she has nowhere alleged that any element of Citi's HELOC was unlawful other than the subordination fee that she alleges violated the SMLA and the SMLA only. She has therefore failed to state a claim under the SMLA, and her SMLA claim should be dismissed as a result.

**B.      Plaintiff's SMLA claim is additionally preempted by the National Bank Act.**

Plaintiff contends that she did not breach a condition on which credit was extended under the HELOC deed of trust, that the subordination fee was therefore not "interest" within the meaning of the National Bank Act ("NBA"), and that her SMLA claim is therefore not

6

preempted as a usury claim thereunder. Citi extended credit to Plaintiff on the condition that she "not enter into **any** agreement with the holder of a Prior Deed of Trust whereby such Prior Deed of Trust, or the indebtedness secured thereby is modified, amended, extended or renewed, without [Citi's] prior written consent." Ex. 2, Deed of Trust at 3 ¶ 3. Regardless of whether the refinance was completed or effective prior to Citi's agreeing to the subordination, it is indisputable that Plaintiff did in fact enter into an agreement with Chase to modify, amend, extend, and renew her first deed of trust, in violation of the terms of her deed of trust with Citi. Therefore, as stated in Citi's Memorandum in Support, the subordination fee was "interest" for NBA purposes, Plaintiff's SMLA claim sounded in usury, and it was therefore preempted as a matter of law pursuant to 12 U.S.C. §§ 85 and 86 and binding Supreme Court precedent. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 10-11 (2003).

Moreover, under Plaintiff's theory, it would be possible to have a fee that is permissible and legal under the NBA but illegal under the SMLA. This is the very definition of a state statute giving rise to a state law claim that is preempted by the federal statute. "Federally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA." *Davis v. Elmira Savings Bank*, 161 U.S. 275, 290, 16 S.Ct. 502, 40 L.Ed. 700 (1896). "The NBA preempts actions challenging the lawfulness of the interest charged by a national bank." *Phipps v. F.D.I.C.*, 417 F.3d 1006, 1011 (8th Cir. 2005).

## IV.   CONCLUSION

For the foregoing reasons, as well as those stated in Citi's Memorandum in Support, the Court should dismiss Plaintiff's Petition in its entirety with prejudice.

Dated: July 21, 2014                    Respectfully submitted,

                                              BRYAN CAVE LLP

                                              By:/s/ Louis F. Bonacorsi
                                                  Louis F. Bonacorsi, #28331MO
                                                  lfbonacorsi@bryancave.com
                                                  Jason A. Kempf, #59897MO
                                                  jason.kempf@bryancave.com
                                                  William O. Scharf, #93449FL
                                                  will.scharf@bryancave.com
                                                  211 North Broadway, Suite 3600
                                                  St. Louis, MO 63102
                                                  (314) 259-2000; (314) 259-2020 (facsimile)

                                              *Attorneys for Defendant*
                                              *Citibank, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via electronic service to all parties of record on the 21st day of July, 2014.

**BICK & KISTNER, P.C.**
Elkin L. Kistner, #35287MO
elkinkis@bick-kistner.com
101 South Hanley Road, Suite 1280
St. Louis, Missouri 63105
(314) 571-6823; (314) 727-9071 (facsimile)

**LAW OFFICES OF DAVIS & GARVIN**
James W. Davis, #36921MO
jdavis@davisgarvinlaw.com
325 N. Kirkwood Road, Suite 210
St. Louis, Missouri 63122
(314) 822-8100 Ext. 22; (314) 965-3369 (facsimile)

**ROBERTS, WOOTEN & ZIMMER, L.L.C.**
Kevin C. Roberts, #31578MO
kevinroberts@rwzlaw.com
P.O. Box 888
Hillsboro, Missouri 63050
(636) 797-2693

/s/ Louis F. Bonacorsi