UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA K. DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:14 CV 1129 CDP |
| ) | |
| CITIBANK, N.A., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Cynthia K. Davis claims that defendant Citibank, N.A., with whom she had a Home Equity Line of Credit, wrongfully charged her a lien subordination fee when she refinanced her underlying home mortgage. The lender with whom she sought to refinance, Chase Mortgage, required her to provide documents showing that Citibank's Deed of Trust had been subordinated to the new Chase security interest. When Davis requested subordination from Citi, it told her it would charge a "$200 subordination fee." She paid the fee, Citi provided the subordination, and Davis was therefore able to complete the Chase refinancing as she desired.

Davis has now sued Citibank, seeking to represent a class of persons similarly situated. She alleges that Citibank was unjustly enriched when it charged her the $200 fee, because the home equity loan documents did not specifically say

such a fee would be required.  She alleges that Citibank's requiring her to pay the $200 was a deceptive practice barred by the Missouri Merchandising Practices Act and constituted common law fraud.  Finally, she alleges that the charge violated Missouri's second mortgage loan act.

After careful consideration, I will deny the motion to dismiss as to Counts I and II, as the allegations are sufficient to state a claim for unjust enrichment and violation of the Missouri Merchandising Practices Act.  I conclude that Davis has failed to allege the proper elements of a claim under Missouri's second mortgage law, an MSMLA claim, and she has not contested Citi's motion to dismiss her fraud claim, so I will grant Citi's motion as to Counts III and IV of Davis's complaint.

### I. <u>Motion to Dismiss Standard</u>

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint.  When considering a 12(b)(6) motion, the court assumes the factual allegations of a complaint are true and construes them in favor of the plaintiff.  *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).  The court may consider all materials attached to the complaint as if they were part of the pleadings.  *See Quinn v. Ocwen Federal Bank FSB,* 470 F.3d 1240, 1244 (8th Cir. 2006).  In this case plaintiff attached, among other things, the Home Equity Line of

Credit Agreement and Disclosure and the letter Citi sent her regarding the $200 fee, so I have considered those documents.

Rule 8(a)(2), Fed. R. Civ. P., provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atlantic Corp. v. Twombly*, the Supreme Court clarified that Rule 8(a)(2) requires complaints to contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." 550 U.S. 544, 555 (2007); accord *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Specifically, to survive a motion to dismiss, a complaint must contain enough factual allegations, accepted as true, to state a claim for relief "that is plausible on its face." *Twombly*, 550 U.S. at 570.

## II.   Background

Davis and her husband own a property located in St. Louis, Missouri that is subject to a first mortgage held by J.P. Morgan Chase N.A. and a second mortgage, in the form of a home equity line of credit (HELOC), which is secured by a Deed of Trust and held by Citi. In the fall of 2011, Davis began working with Chase to refinance her mortgage and was informed that she would need a subordination agreement from Citi stating that the HELOC was subordinated to the refinanced Chase mortgage. Upon requesting subordination from Citi, Davis was notified that Citi charged a $200 subordination fee. Davis paid the fee, and Citi provided the subordination agreement. Davis now claims the subordination fee was wrongful

- 3 -

because it was not provided for in the written terms of her HELOC agreement and was not otherwise disclosed to her until just before it was charged. Citi has moved to dismiss all four of Davis' claims against it.

### III. Discussion

#### A. Count I – Unjust Enrichment

Count I of Davis's complaint asserts that because the HELOC agreement contains no provision regarding subordination fees, Citi had no right to charge such a fee and was unjustly enriched by doing so. Citi argues that this cannot be the basis for a claim of unjust enrichment because it arises out of their written contract. Davis responds that the claim does not arise out of the contract, but instead was unjust because Citi charged something that was *not* in the contract. Whether this can state a claim for unjust enrichment is a very close case, but I conclude that Davis may be able to prove the claim, and so I will deny the motion to dismiss.

##### 1. Governing Law

A federal court sitting in diversity applies the substantive law of the state in which the district court sits. *Urban Hotel Dev. Co. v. President Dev. Co., L.C.*, 535 F.3d 874, 877 (8th Cir. 2008). The obligation to apply state law extends to the forum state's choice-of-law principles. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941); *Winter v. Novartis Pharm. Corp.*, 739 F.3d 405, 410 (8th Cir. 2014).

Citibank argues that Nevada law applies under the choice of law provision contained in the HELOC:

> "The Agreement will be governed by United States federal law, and to the extent the United States federal law is inapplicable, then by the laws of the State of Nevada; except that, with regard to the perfection and enforcement of Citibank's security interest in the Property, the Agreement will be governed by the law of the state where the Property is located."

Missouri generally recognizes and enforces contractual choice-of-law provisions. *Stone v. Crown Diversified Indus. Corp.*, 9 S.W.3d 659, 666 (Mo. Ct. App. 1999). In Missouri, whether a choice-of-law provision that, by its terms, applies to contract actions also reaches non-contract claims depends on whether resolution of the claim relates to interpretation of the contract. *See Pissed Away N6VC v. Stricker*, No. 2:11-cv-0427 NKL, 2012 WL 393418, at *2 (W.D. Mo. Feb. 6, 2012) (the parties' choice-of-law provision applied to plaintiff's fraud and misrepresentation claims because to resolve the tort claims, the court "necessarily must construe [the] contract") *citing Major v. McCallister*, 302 S.W.3d 227, 231 (Mo. Ct. App. 2009) (whether a contract clause applies to reach the action in question depends on whether resolution of the claims relates to interpretation of the contract); *see also Northwest Airlines, Inc. v. Astraea Aviation Services, Inc.*, 111 F.3d 1386, 1392 (8th Cir. 1997) (applying similar Minnesota choice-of-law rule to hold that unjust enrichment claim fell under choice-of-law provision); *Bradbury v.*

*Network Enterprises, Inc.*, No. 4:12-cv-575 CEJ, 2013 WL 587884 (E.D. Mo. Feb. 13, 2013) (applying choice-of-law provision to unjust enrichment claim).

Davis herself alleges that the unjust enrichment claim depends on what is contained (or not contained) in the contract. The parties' choice-of-law provision applies because resolution of the unjust enrichment claim is integrally related to interpretation of the contract. As a result, I will review the unjust enrichment claim under Nevada law.[1]

### 2.   *Substantive Analysis*

Under Nevada law, "unjust enrichment occurs whenever a person has and retains a benefit which in equity and good conscience belongs to another." *Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 113 Nev. 747, 755 (1997)(internal quotation marks and citation omitted). "An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Id.*

Citi argues that Davis and Citi are parties to an express written contract, and Davis's unjust enrichment claim arises out of an alleged violation of the terms of

---

[1] In any event, Missouri's law of unjust enrichment is essentially the same as Nevada's. *See, e.g., Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010)("[i]f the plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply, for the plaintiff's rights are limited to the express terms of the contract"); *Affordable Communities of Missouri v. Fed. Nat. Mortgage Ass'n*, 714 F.3d 1069, 1077 (8th Cir. 2013)(same).

that contract, therefore her claim must fail. To support its point Citi has relied primarily on *Goodwin v. Exec. Trustee Servs., LLC*, 680 F. Supp. 2d 1244, 1255 (D. Nev. 2010).[2] In *Goodwin,* the court determined that the basic premise of the plaintiffs' claim for unjust enrichment was that plaintiffs were "'targeted for and lured' into their mortgages." *Id*. The *Goodwin* plaintiffs' pointed to no extrinsic agreement or arrangement outside the mortgages, and their claims failed because the mortgages themselves were express, written contracts.[3] Here, however, Davis alleges unjust enrichment based on a fee she claims fell outside of the parties' express, written contract. This could be viewed as analogous to the unjust enrichment claim of an employee who has not been paid for work hours not contemplated by the parties' express agreement. *See, e.g., Risinger v. SOC LLC*, 936 F. Supp. 2d 1235, 1244 (D. Nev. 2013) (denying motion to dismiss plaintiff's

---

[2] Plaintiff has also cited *Leasepartners*, 113 Nev. at 755, and *Williams v. JPMorgan Chase Bank*, 452 Fed. App'x 799, 800 (9th Cir. 2011), but the facts of these cases do not support dismissal of an unjust enrichment claim under the facts of this case. *Leasepartners* reverses the dismissal of an unjust enrichment claim where there was no written contract between the parties. 626 P.2d at 755-56. *Williams* provides essentially no facts regarding the plaintiffs' claim other than to note that the "allegations indicate [plaintiffs'] claim is premised on express written agreements." 452 Fed. App'x at 801.

[3] Other cases dismissing unjust enrichment claims in the context of mortgage loans have also addressed situations where the claim appears to be based on charges specifically governed by the contract between the parties. *See, e.g., Josephson v. EMC Mortgage Corp.*, No. 2:10-CV-336 JCM PAL, 2010 WL 4810715, at *3 (D. Nev. Nov. 19, 2010)(dismissing unjust enrichment claim that was based on defendants' failure to properly calculate the interest and credit payments made by the plaintiffs); *Duncan v. Countrywide Home Loans, Inc.*, No. 3:09-CV-00632, 2010 WL 5463863, at *6 (D. Nev. Dec. 28, 2010) ("[p]laintiffs do not allege any benefit bestowed upon any Defendant that is not subject to a contract").

unjust enrichment claim that was based on unpaid work hours not covered by the parties' express agreement).  Although it is a close question, I will deny the motion to dismiss, as it appears Davis's unjust enrichment claim is not based on terms contained within the parties' explicit written agreement.

Citi alternatively argues that the parties' agreement explicitly allowed it to charge the subordination fee.  It cites to two provisions, one contained in the HELOC agreement and one contained in the Deed of Trust.  I do not agree that these provisions authorize the fee.

Section 3 of the Deed of Trust states Davis "shall not enter into any agreement with the holder of a Prior Deed of Trust whereby such Prior Deed of Trust, or the indebtedness secured thereby is modified, amended, extended or renewed, without [Citi's] prior written consent."  According to the clear language of Section 3, consent is required for the modification, amendment, extension or renewal of a *prior* deed of trust.  But here, the complaint plainly avers the fee was charged in exchange for Citi's agreement to subordinate its lien, not in exchange for its consent to the refinancing.

Next, Citi cites to paragraph 5(i) of the HELOC agreement.  This section is entitled "Other Charges" and states that Davis "may have to pay a fee to release a prior lien or security interest in the Property."  Again, this refers to fees to release

*prior* security interests – not to a request that Citi's existing security interest be subordinated to the new Chase security interest.

Nothing in the language of either of these paragraphs indicates that it would apply to the fee Davis claims she was charged. *See S. Trust Mortgage Co. v. K & B Door Co.*, 104 Nev. 564, 568 (1988) (where a contract is "clear and unambiguous on its face, the court must construe it from the language therein"). Citi's motion to dismiss Count I is therefore denied.

        B.      Count II – Missouri Merchandising Practices Act Claim

Missouri's Merchandising Practices Act makes it an unlawful practice to conceal or omit any material fact in connection with the sale of any merchandise.[4] Mo. Rev. Stat. § 407.020(1). Count II of Davis's complaint asserts that Citi's failure to include a provision in the HELOC agreement regarding the subordination fee, and its failure to otherwise disclose the fee to Davis, constitute concealment or omission of a material fact in violation of the MPA. Specifically, Davis alleges that there was no provision in the HELOC allowing Citi to charge a subordination fee and that Citi nevertheless charged this fee and failed to disclose it until shortly before it was charged.[5]

---

[4] The MPA defines Merchandise to include real estate and services.

[5] This count is confusingly pled in that plaintiff also cites Missouri's Uniform Commercial Code, Article 9, Section 9-103(2), and alleges that "Defendant's requirement that Plaintiff subordinate the HELOC to the 1st DOT is a misrepresentation of the law, represented to Plaintiff as fact, and which Plaintiff relied upon in agreeing to pay the subordination fee." But the other allegations of

- 9 -

A plaintiff states a prima facie MPA claim by alleging that she 1) purchased or leased merchandise; 2) primarily for personal family or household purposes; 3) suffered an ascertainable loss of money or property;  4) as a result of the defendant's use of one of the methods or practices declared unlawful by § 407.020(1).  *Reitz v. Nationstar Mortg.*, LLC, 954 F. Supp. 2d 870, 893 (E.D. Mo. 2013); Mo. Rev. Stat. § 407.025.   The Missouri Supreme Court has recently held that a loan agreement such as the HELOC "creates a long-term relationship in which the borrower and the lender continue to perform various duties, such as making and collecting payments over an extended period of time." *Conway v. CitiMortgage, Inc.,* 438 S.W.3d 410 (Mo. 2014).

Citi again relies on the two contract provisions discussed in its unjust enrichment argument, but as stated above, according to the allegations of the complaint, Citi charged Davis a fee in exchange for the subordination agreement, and the contract provisions at issue did not, by their clear terms, authorize such a fee.  Therefore, I will deny Citi's motion to dismiss as to Count II.[6]

---

the complaint and its attachments make it clear that it was Chase, not Citi, who required the subordination.  Because the other allegations are sufficient, and because UCC Article 9 does not apply to Chase's security interest in the property, I will disregard this allegation. *See* Mo. Rev. Stat. 400.9-109(d) (Article 9 does not apply to the "creation or transfer of an interest in or lien on real property").

### C.     Count III – Fraud Claim

Count III purports to be a claim for common-law fraud, but in response to the motion to dismiss, Davis did not oppose the motion but instead conceded that there were "oversights" in pleading the claim. I agree that the count fails to state a claim for fraud and so will dismiss Count III

### D.     Count IV – Missouri Second Mortgage Loan Act Claim

Missouri's Second Mortgage Loan Act, Mo. Rev. Stat. §§ 408.231-241, "places limits on the type and amount of [costs] and fees a lender can charge on residential second mortgage loans secured by Missouri real estate." *Thomas v. U.S. Bank Nat. Ass'n ND*, 575 F.3d 794, 796 (8th Cir. 2009). Citi argues that Davis's SMLA claim fails as a matter of law both because it is completely preempted by the National Bank Act and because it does not properly state a violation of the SMLA. Based on the face of the complaint, I conclude that although preemption does not apply here, Davis has failed to properly allege the elements of an SMLA claim, and this count must be dismissed.

#### 1.     *Preemption*

The NBA, 12 U.S.C. §§ 85-86, provides "an exclusive federal cause of action for usury against national banks" and therefore completely preempts state actions challenging the lawfulness of interest charged by a national bank. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 10 (2003). "[T]here is, in short, no

such thing as a state law claim of usury against a national bank." *Phipps v. F.D.I.C.*, 417 F.3d 1006, 1011 (2005). For purposes of Section 85 of the NBA, interest is defined as "any payment compensating a creditor or prospective creditor for an extension of credit, making available for a line of credit or *any default or breach by a borrower of a condition upon which credit was extended*." 12 C.F.R. § 4.4001(a) (emphasis added); *Phipps*, 417 F.3d at 1011. Citi claims that Davis's alleged agreement with Chase, without Citi's consent, was a breach of Section 3 of the Deed of Trust,[7] and the subordination fee was charged to compensate Citi for Davis's breach.  As a result, Citi argues, the subordination fee qualifies as interest under the NBA, and Davis's claim that the fee violated the MSMLA is preempted.

Citi's preemption argument fails because, based on the face of the complaint, there is no indication that the subordination fee was charged as "compensation" for Davis's alleged breach of the Deed of Trust. Even assuming Davis breached the Deed of Trust terms, the complaint does not describe the subordination fee as a consequence of her breach. In fact, Citi's letter to Davis regarding the charge (Complaint, Ex. 3) states only: "We have received your request for the subordination of your Home Equity Account. Please note that Citi charges a $200.00 subordination fee. This fee will be assessed to your account and

---

[7] As noted, Section 3 of the Deed of Trust states in part that Davis "shall not enter into any agreement with the holder of a Prior Deed of Trust whereby such Prior deed of Trust, or the indebtedness secured thereby, is modified, amended, extended or renewed, without [Citibank's] prior written consent."

will appear as a fee on your monthly account statement." The letter seems to characterize the fee as a standard charge for subordination, not a fine or penalty for Davis's default. As a result, I conclude that the subordination fee does not qualify as interest under the NBA, and Davis's SMLA claim is not preempted.

### 2. *Failure to State a Claim*

The SMLA permits second mortgage loan lenders to charge any interest rate agreed to by the parties, but it limits (and delineates) the fees that may be charged. *See* Mo. Rev. Stat. §§ 408.232.1 and 408.233. However, Section 408.232.4 states that the act does not apply "to any loans on which the rate of interest and fees charged are lawful under Missouri law without regard to the rates…and fees permitted in [the SMLA]." In her complaint, Davis alleges nothing regarding Citi's interest rate. She claims that Citi's subordination fee violates the SMLA because it is not an authorized charge under Section 408.233. She does not claim Citi's interest rate or fees violate any Missouri law other than the SMLA.

Section 408.232.4, requiring the defendant's interest rate or fees to be unlawful under some other Missouri law in order for the SMLA to apply, was last amended in 2004. Before 2004, this subsection contemplated the lawfulness of only the interest rate and stated: "[The SMLA] shall not apply to any loans on which the rate of interest charged is lawful without regard to the rates permitted in

- 13 -

subsection 1 of this section."[8]  *See Mitchell v. Residential Funding Corp.*, 334 S.W.3d 477, 494 (Mo. Ct. App. 2010).  Therefore, before the 2004 amendments, a plaintiff stated a prima facie case for violation of the SMLA by pleading that: (1) she obtained a secondary mortgage loan; (2) an unlawful rate of interest was charged on the loan; and (3) the fees charged in connection with the loan were not authorized by Section 408.233.  *See Avila v. Commty. Bank of Virginia*, 143 S.W.3d 1, 4-5 (Mo. Ct. App. 2003); *Phipps v. F.D.I.C.*, 417 F.3d 1006, 1014 (8th Cir. 2005).

Neither party in the instant case disputes that the post-2004 SMLA language applies in this case.  However, neither party has cited, and this Court has been unable to find, a Missouri state or federal opinion analyzing the effect of the 2004 amendments on the pleading requirements for SMLA claims.  In its motion to dismiss, Citi argues that Davis's claim fails because she has not alleged, in accordance with the plain language of Section 408.232.4, that the HELOC interest rate or fees were unlawful under some law other than the SMLA.  In her response, Davis cites two cases in support of her argument that she does not have to show the interest rate or fees were unlawful under another law.  She asserts that under the "current statutory language, the Eighth and Missouri Court of Appeals both have

---

[8] The changes made to this section by the 2004 amendments appeared as follows:
Sections 408.231 to 408.241 shall not apply to any loans on which the rate of interest **and fees** charged ~~is~~ **are** lawful **under Missouri law** without regard to the rates permitted in subsection 1 of this section **and the fees permitted in section 408.233**.  BANKS AND BANKING, 2004 Mo. Legis. Serv. H.B. 959 (VERNON'S)

upheld causes of action based on the charging of fees that the SMLA does not expressly permit, and regardless of the interest rate."

Neither of the cases cited by Davis supports her argument. The court in *Mitchell v. Residential Funding Corp.*, applied a pre-2004 version of the SMLA, holding that the statute's fee limitations were "only applicable to second mortgage loans on which an unlawful rate of interest is charged." 334 S.W.3d at 494. (internal quotation marks and citation omitted). Similarly, in *Washington v. Countrywide Home Loans, Inc.*, 655 F.3d 869, 873 (8th Cir. 2011), although the court did not explicitly address the elements of a prima facie case, it did note that "[i]n exchange for allowing lenders to offer interest rates that exceed the statutory usury rate, the MSMLA limits the closing costs and fees that lenders may charge." Furthermore, the plaintiffs in *Washington* claimed the defendant had charged "unauthorized *interest and fees* in violation of section 408.233.1." *Id.* at 871 (emphasis added). And the loan at issue was payable at 12 percent interest, *id.*, which is higher than Missouri's standard statutory usury rate. S*ee* Mo. Rev. Stat. § 408.030. 1; *see also Phipps v. F.D.I.C.*, 417 F.3d 1006, 1009 (8th Cir. 2005) (Missouri's usury law caps interest rates at 10% or market rate).

In the time period since the 2004 amendments, to the limited extent that courts have addressed the elements of an SMLA claim, they have either, like *Mitchell*, applied a pre-2004 version of the statute or they have not clearly stated

which version of the statute they are applying. *See, e.g., Phipps v. F.D.I.C.*, 417 F.3d 1006, 1013-14 (8th Cir. 2005) (applying earlier version of statute); *Wong v. Bann-Cor Mortg.*, 878 F. Supp. 2d 989, 1006-08 (2012) (not clearly stated); *Mayo v. UBS Real Estate Securities, Inc.*, No. 08-00568-CV-W-DGK, 2011 WL 1136438, at *5 (W.D. Mo. Mar. 25, 2011) (not clearly stated). In any event, no court has directly addressed the question of how to state a claim for an SMLA violation under the existing statutory language. Therefore, it seems that the question before me is one of first impression.

Generally, a federal court is bound by the interpretation of a state's statutes by the state's highest court. *Missouri v. Hunter*, 459 U.S. 359, 366–68 (1983). In the absence of such an interpretation, however, the federal court has the "responsibility to predict, as best [it] can, how that court would decide the issue." *Brandenburg v. Allstate Ins. Co.*, 23 F.3d 1438, 1440 (8th Cir.1994). The Missouri Supreme Court's "primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Parktown Imports, Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672 (Mo. 2009). Here, the plain language of the statute is clear and, in form, relatively unchanged from its earlier version. Therefore, I conclude that in order to properly plead a violation of the SMLA, Section 408.232.4 requires a plaintiff to allege: 1) she obtained a secondary mortgage loan; 2) the interest rate or fees charged by a

defendant were unlawful under some extrinsic Missouri law; and 3) the fees charged in connection with the loan were not authorized by Section 400.233.[9]  In light of this, Davis's bare allegation that the subordination fee is not contained in the exclusive list of allowable fees under the SMLA is insufficient, and she has failed to state a claim under the Missouri Second Mortgage Loan Act.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss [#8] is **GRANTED** as to Counts III and IV of plaintiff's complaint and **DENIED** as to Counts I and II of plaintiff's complaint.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 4th day of March, 2015.

---

[9] This interpretation also comports with how Missouri courts interpreted the statute before the 2004 amendments.  Namely, the extrinsic unlawfulness of the interest rate (and now the fees), must be affirmatively pled as part of the plaintiff's prima facie case. *See Avila,* 143 S.W.3d at 4-5; *Adkison v. First Plus Bank*, 143 S.W.3d 29, 34-35 (8th Cir. 2011).