IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CYNTHIA K. DAVIS,

Plaintiff,

v.

CITIBANK, N.A.,

Defendant.

No. 4:14-cv-01129-CDP

# Plaintiff's Memorandum of Law to Support Motion for Class Certification

Plaintiff Cynthia K. Davis ("Plaintiff"), individually and for all others similarly situated, through the undersigned attorneys, moves the Court to certify this action as a class action under Rule[1] 23:

## A. Introduction

Plaintiff seeks to represent a class of persons wrongfully charged a subordination fee by Citibank, N.A. ("Citi") for their Home Equity Lines of Credit (HELOC) when they refinanced their underlying mortgage. Although Citi's form HELOC documents did not authorize Citi to charge a subordination fee, Citi charged a processing fee for all subordination requests. Citi's uniform practice of charging a subordination fee on its HELOCs give Plaintiff and each class member the same legal remedy against Citi for unjust enrichment under Nevada law. Citi's subordination fees on its HELOCs also allow each class

[1] All rule references are to the Federal Rules of Civil Procedure.

member whose Missouri property secured its HELOC to have a remedy against Citi under the Missouri Merchandising Practices Act (MMPA). All the requirements under Rule 23 are satisfied as discussed in more detail below and Plaintiff's motion for class certification should be granted, which certifies the following two classes as defined or modified by the Court:

> ***Unjust Enrichment Class***
> All persons in the United States who paid Citi or its predecessors[2] a fee from April 25, 2009 through the present to subordinate Citi's HELOC where Citi's HELOC did not state a fee would be charged to subordinate Citi's lien.
>
> ***MMPA Class***
> All persons in the United States who paid Citi or its predecessors a fee from April 25, 2009 through the present to subordinate Citi's HELOC secured by Missouri property where Citi's HELOC did not state a fee would be charged to subordinate Citi's lien.

## B. Facts

The facts supporting Plaintiff's claim are simple and similar to those of the class members.

Plaintiff and her husband own real property subject to a first mortgage and a second mortgage held by Citi in the form of a HELOC secured by a Deed of Trust. In the fall of 2011, Davis was refinancing her first mortgage and was informed she would need a subordination agreement from Citi stating the HELOC was subordinated to the refinanced first mortgage. Upon requesting subordination from Citi, Davis was notified Citi charged a $200 subordination

[2] Citi, N.A. has several predecessors. For example, Citibank, Federal Savings Bank (the entity listed on Plaintiff's Deed of Trust at Doc. 4-2, p. 11) was acquired by CitiBank, N.A. Citi's predecessors are listed here: www.ffiec.gov/nicpubweb/nicweb/AcquisitionForm.aspx?parID_RSSD=476810&parDT_END=99991231

fee. Davis paid the fee, and Citi provided the subordination agreement. However, Plaintiff's HELOC agreement and the Deed of Trust securing it do not authorize Citi to charge a subordination fee. Indeed, the Court has already rejected the only two provisions Citi has argued allow it to charge a subordination fee. *See* Doc. 21, pp. 8-9.

Like Plaintiff, each class member owns real property subject to a first mortgage and a second mortgage held by Citi in the form of a HELOC secured by a deed of trust or mortgage. When the class members refinanced their first mortgages, they were required to request subordination from Citi by submitting a mortgage subordination request stating that Citi charges a "non-state specific" subordination fee. *See, e.g.,* Docs. 47-1, 47-2. The class members paid the subordination fee and Citi provided the subordination agreement. However, the class members' HELOC agreements and the deeds of trusts or mortgages securing the HELOCs do not authorize Citi to charge a subordination fee.

**C. Legal Standard**

Class certification is appropriate when Plaintiff satisfies all of the requirements of Rule 23(a) and the requirements of one of the subsections of Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011). Rule 23(a) sets out four threshold requirements for class certification — (1) sufficiently numerous parties, (2) common questions of law or fact, (3) typicality of claims or defenses, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a). Under Rule 23(b)(3), the rule under which Plaintiff seeks to certify the class, a district court must determine whether "the questions of law or fact common to

class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The district court has "broad discretion to decide whether certification is appropriate." *Prof. Firefighters Ass'n of Omaha, Local 385 v. Zalewski,* 678 F.3d 640, 645 (8th Cir. 2012). This discretion should be exercised in light of the policy behind class actions:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Products, Inc. v. Windsor,* 117 S. Ct. 2231, 2246 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F. 3d 338, 344 (1997)). The policy that "favor[s] maintenance of class actions . . . is especially strong in instances where denial of class status would effectively terminate further litigation . . .." *King v. Kansas Citi Southern Industries, Inc.*, 519 F.2d 20, 26 (7th Cir. 1975).

## D. Argument

As required by Rule 23(a), there are numerous class members (numerosity), who unjustly enriched Citi by paying subordination fees concealed by Citi (commonality), whose claims are typical of the claims of other class members (typicality) and whose claims will be vigorously prosecuted by Plaintiff and her experienced counsel (adequacy). As required by Rule 23(b)(3), there are common questions of fact and law at the very heart of this case (predominance) and the class action procedural device is the only effective way to resolve the claims of

Plaintiff and the class (superiority). Therefore, this is an ideal case for class treatment.

### I. Rule 23(a) Requirements are Satisfied

There are four prerequisites to a class action under Rule 23(a): numerosity, commonality, typicality, and fair and adequate representation. Each one of these requirements is met as discussed below.

#### ***1. The classes are so numerous that joinder is impracticable.***

Rule 23(a)(1) requires the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In making this determination, "there is not a magic number," rather "courts generally follow the rule of thumb that a class of over 40 is sufficiently 'numerous' for Rule 23 purposes." *Casey v. Coventry Healthcare of Kansas, Inc.,* No. 08-0201-CV-W-DGK, 2010 WL 3636140, at *2 (W.D. Mo. Sept. 10, 2010); *White v. Martin,* No. 02-4254-CV-C-NKL, 2002 WL 34560467, at *2 (W.D. Mo. July 26, 2002); *see also* Newberg on Class Actions § 3:12 (5th ed.) ("a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone"). A trial court conducting Rule 23(a) analysis "may rely on common sense assumptions to support findings of numerosity." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 660 (E.D. Cal. 2008) (citing Manual for Complex Litigation (Fourth) § 23.22(3) (2008)).

Here, Plaintiff does not know the exact number because it has not received the requisite discovery from Citi, but Citi has produced a spreadsheet showing over 500 "HELOCs secured by a Missouri property, which relate to a subordination fee transaction that occurred on or after April 25, 2009 through April

25, 2014." *See* Docs. 46, 47-3. Citi's production is narrower than the proposed class definition, so common sense dictates the class is much larger, but with over 500 class members, numerosity is satisfied.

***2. The case presents common questions of fact and law.***

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

> The mere presence of factual differences will not defeat the maintenance of a class action if there are common questions of law uniting the class members' claims…. commonality does not require that every question of law or fact be common to every member of the class ... and may be satisfied, for example, where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated. While plaintiffs must show that there are questions of law or fact common to the class, they need not show that all issues raised by the dispute are common.

*Downing v. Goldman Phipps PLLC*, No. 4:13-CV206-CDP, 2015 WL 4255342, at *4 (E.D. Mo. July 14, 2015) (internal citations, quotes and parentheticals omitted).

Here, all class members will face a common legal question: whether Citi was unjustly enriched or violated the MMPA when its form HELOCs did not expressly authorize it to charge a subordination fee or otherwise disclose that such a fee would be charged. *Id.* This question is common for the Unjust Enrichment Class even if the HELOCs contain different choice of law provisions because there "is general agreement among courts that the 'minor variations in the elements of unjust enrichment under the laws of the various states ... are not material and do not create an actual conflict." *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 647 (S.D. Fla. 2015). Commonality is satisfied.

### *3. Plaintiff's claims are typical of the claims of the class members.*

Rule 23(a)(3) requires that "the claims … of the representative parties are typical of the claims … of the class" Fed. R. Civ. P. 23(a)(3). This requirement is closely tied with commonality. *Cf. Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 157 n.13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge."). "Typicality" means that there are "other members of the class who have the same or similar grievances as the Plaintiff[s]." *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 830 (8th Cir. 1977) (citations omitted). "The named plaintiffs and the class members may be said to have similar grievances if they have been subjected to the same allegedly unlawful treatment." *Downing*, 2015 WL 4255342, at *4.

Here, each of the proposed class members would have essentially the same grievances as Plaintiff — Citi unjustly benefitted and violated the MMPA by wrongfully charging Plaintiff and the proposed class members subordination fees. Typicality is satisfied. *Id.*

### *4. Plaintiff and her counsel will adequately protect the interests of the class.*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class" Fed. R. Civ. P. 23(a)(4). "The adequacy of representation requirement under Rule 23(a)(4) seeks to discover conflicts of interest between named representatives and the class they seek to represent." *Downing*, 2015 WL 4255342, at *5. "A class representative must be part of the class, possess the same interest, and suffer the same injury as the prospective class members." *Id.*

Here, Plaintiff has suffered the same harm and has the same interests as the prospective class members: they have all paid subordination fees to Citi despite the HELOC's neither authorizing nor disclosing subordination fees. Plaintiff has now retained a law firm with a record of successful complex-litigation experience to represent the class in this suit, and there are no allegations of a conflict of interest between the Plaintiff and the proposed class. Adequacy is satisfied. *Id.*

## II. Rule 23(b) Requirements are Satisfied

Once the four requisites of 23(a) are met, a party seeking class certification must show certification is appropriate under at least one of the subsections of Rule 23(b). Under Rule 23(b)(3), the rule in which Plaintiff seeks to certify the class, a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) is a less stringent requirement than Rule 23(b)(1) or (b)(2). *See AmChem*, 117 S.Ct. at 2245 ("Framed for situations in which class-action treatment is not as clearly called for as it is in Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3) permits certification where class suit may nevertheless be convenient and desirable.") (internal quotations omitted).

The core purpose of Rule 23(b)(3) is to vindicate the claims of groups of people whose individual claims would be too small to warrant litigation. *See id.* at 617 ("While the text of Rule 23(b)(3) does not exclude from certification cases

in which individual damages run high, the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.") (internal quotations omitted); *see also Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 338 n. 9 (1980) ("A significant benefit to claimants who choose to litigate their individual claims in a class-action context is the prospect of reducing their costs of litigation, particularly attorney's fees, by allocating such costs among all members of the class who benefit from any recovery."). Both predominance and superiority are satisfied here.

***1. Common questions predominate.***

Rule 23(b)(3) requires the Court to find "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *See AmChem*, 117 S.Ct. at 2236.

> When determining whether common questions predominate, the court must conduct a limited preliminary inquiry to gauge whether, if the plaintiffs' allegations are true, common evidence could establish a prima facie case for the class. If making a prima facie case requires that members of the proposed class must present different evidence for each member, then it is an individual question. Courts are less likely to find that common issues predominate when the governing law varies widely amongst class members.

*Downing*, 2015 WL 4255342, at *5; *see also Hopkins v. Kansas Teachers Cmty. Credit Union*, 265 F.R.D. 483, 487-88 (W.D. Mo. 2010).

Here, Plaintiff's and the proposed class's claims for unjust enrichment and violation of the MMPA raise the same legal question: Do the HELOC documents authorize Citi to, or disclose that Citi will, charge a subordination fee? To prove these claims, Plaintiff must enter evidence of her HELOC documents, which the Court may, and has, used to determine the legal question of whether Citi was unjustly enriched and violated the MMPA by charging subordination fees not authorized by the loan documents. *See, e.g.,* Doc. 21, pp. 6-10. While it is possible not all class members had HELOC's exactly the same as Plaintiff's HELOC, all the class member's HELOC's fail to state or otherwise disclose a fee would be charged to subordinate Citi's lien, so the class member will rely on the same basic evidence to prove their case (i.e., whatever version of the HELOC documents they signed). *See Hopkins*, 265 F.R.D. at 488. Resolution of the issue of whether the HELOC failed to authorize or otherwise disclose the subordination fees will resolve all class members' claims.

Citi might argue the governing law varies widely amongst the Unjust Enrichment Class members. However, the potential number of states' laws that may be applied is already limited by the Court's ruling that the choice of law provision in the HELOC controls the unjust enrichment claim. *See* Doc. 21, pp. 4-6. As evidenced by Plaintiff's HELOC, regardless of where the property is located Citi's HELOC made Nevada the governing law, presumptively because that was Citi's headquarters at the time.[3] That remained Citi's headquarters

[3] *See* http://www.ffiec.gov/nicpubweb/nicweb/Acquisition-Form.aspx?parID_RSSD=476810&parDT_END=99991231

until July 7, 2011, at which point it moved to South Dakota and has been there since. South Dakota's law of unjust enrichment is essentially the same as Nevada's. *See* Doc. 21, p. 6 (Under Nevada law, "unjust enrichment occurs whenever a person has and retains a benefit which in equity and good conscience belongs to another."); *Parker v. W. Dakota Insurors, Inc.,* 605 N.W.2d 181, 184-85 (S.D. 2000) ("Unjust enrichment occurs when one confers a benefit upon another who accepts or acquiesces in that benefit, making it inequitable to retain that benefit without paying.").

Citi has objected to producing discovery that would demonstrate whether other states' laws would be involved[4], but even if they were:

> There "is general agreement among courts that the minor variations in the elements of unjust enrichment under the laws of the various states ... are not material and do not create an actual conflict." *Pennsylvania Emp., Benefit Trust Fund v. Zeneca, Inc.,* 710 F.Supp.2d 458, 477 (D.Del.2010). A leading case is *In re Mercedes–Benz Tele Aid Contract Litig.,* 257 F.R.D. 46 (D.N.J.2009)(certifying nationwide class), *and* 267 F.R.D. 113 (D.N.J.2010) ("*Mercedes II*") (denying decertification motion), *Rule 23(f) pet. denied,* 2010 U.S.App. LEXIS 8087 (3d Cir. Apr. 19, 2010). In *Mercedes,* the district court undertook a searching analysis of the comparative law of unjust enrichment in the context of class certification, and concluded that "[w]hile there are minor variations in the elements of unjust enrichment under the laws of the various states, those differences are not material and do not create an actual conflict." *Id.* at 58. The court reaffirmed this analysis in *Mercedes II,* 267 F.R.D. at 119–23. This reasoning is persuasive, and courts in this District have reached similar results. In *In re Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. 672, 697 & n. 40 (S.D.Fla.2004), the court certified a multi-state unjust enrichment class, finding that "[t]he standards for evaluating each of the various states classes' unjust enrichment claims are virtually

[4] Citi was only willing to produce the highlighted HELOCs on Doc. 46, which reflected "the loans that contain the same choices of law, lender, and beneficiary as Plaintiff's HELOC Agreement and HELOC Deed of Trust." *See* Doc. 48-3. Just like this arbitrary limitation is an attempt to stymie Plaintiff's class certification efforts, so too was Citi's production of these limited documents on May 3, 2016, at 9:05 p.m. (the night before Plaintiff's class certification briefing was due and 91 days after Citi was served with discovery).

> identical" and that minor variation in states' laws "present[ed] no obstacle to class certification." *See also Singer,* 185 F.R.D. at 692 (concluding that the elements of unjust enrichment are "materially the same throughout the United States."). Courts elsewhere are in accord. *See, e.g., In re Abbott Laboratories Norvir Anti–Trust Litig.,* 2007 WL 1689899, at *9–10 (N.D.Cal.2007) (certifying nationwide unjust enrichment class, finding that "the variations among some states' unjust enrichment laws do not significantly alter the central issue or the manner of proof"). Application of the unjust enrichment doctrine has a "universal thread," *Schumacher v. Tyson Fresh Meats, Inc.,* 221 F.R.D. 605, 612 (D.S.D.2004), and the claim is well-suited for multi-state class treatment by virtue of its uniform availability and focus on the defendant's ill-gotten gain.

*In re Checking Account Overdraft Litig.*, 307 F.R.D. at 647.

Here, just like in *In re Checking Account Overdraft Litig.* and the cases it collected, common circumstances bear upon whether Citi's retention of a benefit from class members was unjust. The focus of the unjust enrichment claim is Citi's ill-gotten gains through subordination fees it wrongly charged because the fees were not authorized by the HELOC or otherwise disclosed. Common issues predominate, and so the first requirement under Rule 23(b)(3) is satisfied.

***2. A class action is superior to other available methods.***

Rule 23(b)(3) requires the Court to find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) lists four matters pertinent to the finding of superiority:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of

> concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

All of these matters weigh in favor of finding superiority satisfied here.

*First*, the individual class members likely have little to no interest in controlling the prosecution of separate actions given the potential damages of each class member is around $200. Such small recoveries "do not provide the incentive for any individual to bring a solo action prosecuting his or her rights," *Mace*, 109 F.3d at 344, and would be considered by nearly all "attorneys to be of such a small size that prosecution of the case would be cost prohibitive if Plaintiffs were forced to litigate the remaining claims separately." *Hopkins*, 265 F.R.D. at 490. *Second*, there is no evidence any other member of the class has commenced litigation against Citi regarding subordination fees. *Third*, concentrating separate actions based on the same underlying conduct in one action promotes judicial economy and efficiency and consistency of judgments. *Finally*, the class is not so large that manageability will be a problem, and the parties can devise solutions to address any manageability issues and ensure the adjudication of the case is both fair and efficient.

## E. Conclusion

As demonstrated above, all the requirements of Rule 23 are met for Plaintiff's claim for unjust enrichment and violations of the MMPA. Plaintiff respectfully requests the Court grant her motion for class certification, certify the class as defined above or as modified by the Court, designate Plaintiff as the class representative and appoint counsel as class counsel.

ONDER, SHELTON, O'LEARY &
PETERSON, LLC

By *__/s/Martin L. Daesch__*
Martin L. Daesch #40494MO
Jesse B. Rochman #60712MO
110 E. Lockwood
St. Louis, MO 63119
(314) 963-9000 telephone
(314) 963-1700 facsimile
daesch@onderlaw.com
rochman@onderlaw.com
*Attorneys for Plaintiff*

## Certificate of Service

The undersigned hereby certifies that on May 4, 2016, a copy of the foregoing was electronically filed with the Court, which sent notices to all parties entitled to receive notice through the Court's CM/ECF system.

*__/s/Martin L. Daesch__*